**WOODSTOCK/KENOSHA HEALTH CENTER, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of the United States Department of Health and Human Services, and Donald E. Percy, Secretary of the Wisconsin Department of Health and Social Services, Defendants.**

Civ. A. No. 81–C–550.

United States District Court, . E. D. Wisconsin.

June 22, 1982.

Thomas C. Fox and Joel M. Hamme, Pierson, Ball & Dowd, Washington, D. C., and Robert M. Salinger, Petrie, Stocking, Meixner & Zeisig, Milwaukee, Wis., for plaintiff.

Joseph P. Stadtmueller, U. S. Atty. by Melvin K. Washington, Asst. U. S. Atty., Milwaukee, Wis., and Donna Morros Weinstein, Regional Atty. by Thomas W. Crawley, Asst. Regional Atty., Chicago, Ill., for Schweiker.

Bronson C. LaFollette, Atty. Gen. by F. Thomas Creeron, III, Asst. Atty. Gen., Madison, Wis., for Percy.

REYNOLDS, Chief Judge.

Plaintiff Woodstock/Kenosha Health Center has filed this complaint seeking judicial review of administrative actions of the defendant Secretary of the United States Department of Health and Human Services ("federal defendant") and his agents in holding that the plaintiff, Woodstock/Kenosha Health Center, did not qualify, during the period November 1, 1975, through November 30, 1976, for a renewal of its agreement to furnish skilled nursing services to eligible beneficiaries of the Medicare program. As a result of this ruling, the federal defendant has also claimed that the plaintiff was ineligible to provide skilled

nursing and intermediate care services to eligible beneficiaries of Wisconsin's Medicaid program for the period November 1, 1975, through November 30, 1976.

In addition to seeking judicial review of the defendants' actions in decertifying plaintiff as a Medicare provider of services during this period, plaintiff also requests declaratory and injunctive relief. Both the federal defendant and the defendant Secretary of the Wisconsin Department of Health and Social Services ("state defendant") have threatened to recoup from plaintiff federal and state monies previously reimbursed to plaintiff for care which plaintiff has already rendered to eligible Medicaid beneficiaries during the period November 1, 1975, through November 30, 1976. Plaintiff seeks a declaration that such recoupment would be illegal and seeks to enjoin any attempt at recoupment.

The state defendant has crossclaimed against the federal defendant and has counterclaimed against the plaintiff.

Presently before the Court are the motion of federal defendant to dismiss the crossclaim of the state defendant and the motion of the plaintiff for summary judgment against the federal defendant. Oral arguments on these motions were heard by the Court on Friday, June 4, 1982. The motion to dismiss will be denied and the motion for summary judgment granted.

This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. §§ 405(g) and 1395ff(c), and has pendent jurisdiction over plaintiff's claims based on Wisconsin law against the state defendant. This Court is authorized to issue appropriate declaratory relief against defendants under 28 U.S.C. §§ 2201–02.

FACTS

The facts underlying this action are not disputed. Plaintiff Woodstock/Kenosha Health Center is a 183 bed long term care facility with its principal place of business at 3415 Sheridan Road, Kenosha, Wisconsin 53140. Plaintiff has been certified as a provider of skilled nursing services in the Medicare program at all times since May 19, 1972, except for the period from November 1, 1975, through November 30, 1976. Plaintiff was also certified as a provider of skilled nursing and intermediate care services in the Medicaid program prior to the relevant periods involved in this case and continues to be so certified.

During 1975 and 1976, the United States Department of Health and Human Services ("HHS"), formerly Health, Education, and Welfare, relied solely on state agencies to survey institutions for purposes of certifying them as skilled nursing and intermediate care facilities entitled to participate in the Medicare and Medicaid programs. In May 1975, the Division of Health of the Wisconsin Department of Health and Social Services ("WHSS")—which acts as the state survey agency for HHS for Medicare certification purposes—conducted a survey of plaintiff and alleged that certain deficiencies existed. Based on this survey, the state survey agency recommended that plaintiff be decertified from the Medicare program. On September 25, 1975, HHS issued a notice to plaintiff which extended plaintiff's Medicare provider agreement for a two-month period from August 31, 1975, until October 31, 1975, but which also initially notified plaintiff that its Medicare provider agreement would not be renewed after that time. On October 1, 1975, plaintiff requested reconsideration by HHS of its decision not to renew plaintiff's Medicare provider agreement.

On October 23, 1975, the state survey agency issued a report which withdrew its recommendation that plaintiff's Medicare provider agreement not be renewed and recommended, instead, that a renewal of that agreement be made by means of a conditional provider agreement. This report was based on a survey conducted on September 11, 1975, as well as a telephone contact on October 23, 1975. The state survey agency notified plaintiff of the report and recommendations on October 30, 1975.

During the reconsideration deliberations as to renewal of plaintiff's Medicare provider agreement, HHS personnel recommended

that a short-term (eight-month) agreement be issued to extend plaintiff's Medicare certification from November 1, 1975, through June 30, 1976. Documents effectuating that recommendation were prepared but were never finalized or sent to the pertinent parties.

Based on a survey conducted May 2, 1976, the state survey agency issued a report, dated May 12, 1976, which alleged that plaintiff was deficient in certain respects. At the end of July 1976, the state survey agency recommended to HHS that plaintiff's Medicare certification be denied. On August 2, 1976, the state survey agency advised plaintiff by letter that its Medicare provider agreement expiring on August 31, 1976, could not be renewed because of alleged deficiencies.

On October 8, 1976, however, the state survey agency withdrew its recommendation that plaintiff's Medicare certification be denied and recommended that plaintiff be permitted to participate in the Medicare program. This action was based on a survey conducted on September 29, 1976, which found that plaintiff was eligible for Medicare certification. Plaintiff rendered no services to Medicare beneficiaries, and received no Medicare reimbursement for such services, during the period November 1, 1975, through November 30, 1976.

On January 27, 1977, sixteen months after plaintiff's request for reconsideration of the decision not to renew its Medicare agreement effective November 1, 1975, HHS denied plaintiff's request for reconsideration. In this notice, HHS stated that, since the state survey agency's September 29, 1976 survey showed that plaintiff was eligible for Medicare participation, plaintiff could be issued a new Medicare provider agreement effective December 1, 1976, if another survey by the state survey agency demonstrated plaintiff's eligibility. Ultimately, plaintiff was issued such an agreement and has continued to participate in the Medicare program.

Because of plaintiff's failure to obtain certification as a Medicare provider for the period from November 1, 1975, to November 30, 1976, HHS attempted to retroactively terminate plaintiff's participation in the Medicaid program during that period. Plaintiff had been notified on January 16, 1976, that its Medicaid provider agreement certifying plaintiff to participate as an intermediate care facility had been extended to a one year period through August 31, 1976. On January 27, 1977, HHS notified WHSS that plaintiff's request for reconsideration of its Medicare non-renewal had been denied and that Social and Rehabilitation Services (a branch of HHS) had been alerted to terminate retroactively federal financial participation for plaintiff as a skilled nursing facility under the Medicaid program effective November 1, 1975. As a consequence of the order of HHS, WHSS notified plaintiff, on February 24, 1977, that its certification as a Medicaid provider was retroactively terminated effective November 1, 1975.

The February 24, 1977, notification of plaintiff by state defendant occurred even though plaintiff and WHSS had entered into and performed Medicaid provider agreements for intermediate care services during the period November 1, 1975, through November 30, 1976, and even though plaintiff continued to receive Medicaid reimbursement for Medicaid eligible skilled nursing care patients who continued to be placed with plaintiff and who received care from plaintiff during this period. During this period, the amount of reimbursement paid to plaintiff for skilled nursing facility services to eligible Medicaid beneficiaries was approximately $683,416.27.

Pursuant to 42 C.F.R. § 405.1530, plaintiff filed a timely request for hearing as to the decision of HHS to deny plaintiff's Medicare certification for the period November 1, 1975, through November 30, 1976. On June 21, 1979, the Administrative Law Judge issued an opinion finding that the decision of HHS to deny plaintiff's Medicare certification for that period was in error and that plaintiff was entitled to such certification for that period.

HHS requested review of the Administrative Law Judge's June 21, 1979 decision

and, on February 27, 1980, the Appeals Council granted that request under 42 C.F.R. § 405.1563. On March 18, 1981, the Appeals Council issued a decision reversing the Administrative Law Judge and ruling that the non-renewal by HHS of plaintiff for Medicare participation during the period November 1, 1975, through November 30, 1976, was appropriate. On May 18, 1981, the plaintiff filed this action appealing the decision of the Appeals Council, and seeking declaratory and injunctive relief.

Agents of the federal defendant have informed the state defendant that the Appeals Council's decision means that any Medicaid payments to plaintiff for skilled nursing facility services during the period November 1, 1975, through "October 30, 1976 (sic)" were improper and that WHSS should initiate action for timely recovery of improper payments (especially of federal monies). Agents of the federal defendant have also threatened WHSS with a disallowance of the federal share of any such payment. Agents of the state defendant have informed plaintiff that WHSS does not desire to recoup any Medicaid monies paid by WHSS for skilled nursing facility services during the period November 1, 1975, through November 30, 1976, and that it will initiate such recoupments only if forced to do so because the federal defendant initiates a disallowance action against WHSS for the federal share of such monies. The federal defendant has agreed not to initiate a disallowance until this action is resolved.

## JURISDICTION

This action presents a unique procedural posture. The only legal harm for which the plaintiff seeks redress is the threatened recoupment of Medicaid funds. Thus, this action appears to be primarily one for declaratory and injunctive relief. Yet, this recoupment is based upon the failure of HHS to certify plaintiff as a Medicare provider during the period in dispute. Because this action was filed within the time allowed for the plaintiff to seek judicial review of the Appeals Council Medicare decertification decision, the plaintiff is also before this Court seeking such review.

Thus, in one sense this Court is sitting in an appellate capacity, and in another sense as a trial Court. But in substance, this is an action for declaratory and injunctive relief in which one of plaintiff's grounds for relief is the allegedly incorrect Appeals Council decision. This action would still be proper if the plaintiff did not challenge the Appeals Council decision, or if the plaintiff was unable to challenge the Appeals Council decision because the judicial action was filed too late. Because the plaintiff has filed this action within the time allowed to seek review of the Appeals Council decision, error in that decision may be asserted as a ground for relief. However, other grounds for relief may also be asserted.

■ Because of the unique procedural posture of this action, the cases cited by the federal defendant in support of the proposition that this Court has jurisdiction only under 42 U.S.C. § 405, and not under its federal question jurisdiction, 28 U.S.C. § 1331, are not on point. *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) and *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), involved a request for judicial review of agency determinations that were subject to administrative review using the procedures of § 405. This is an action for declaratory and injunctive relief regarding a Medicaid disallowance that is not subject to administrative review under § 405. Thus, § 405(h) does not limit the jurisdiction this Court has to consider this case under its federal question jurisdiction.

## RIPENESS OF THE CROSSCLAIM—EXHAUSTION OF ADMINISTRATIVE REMEDIES

■ The federal defendant argues that this Court has no jurisdiction over the crossclaim of the state defendant because the state may resort to an administrative appeals process if the federal government disallows funds to the state. As the state defendant correctly responds, the question before the Court is one of whether the agency has primary jurisdiction, not wheth-

er the state has exhausted its administrative remedies. If not for the plaintiff's action, the Court might be inclined to exercise its discretion to relegate the state to the administrative review process. However, since the plaintiff presents a ripe controversy, this is not a case where resort to the administrative process might moot the judicial controversy. The plaintiff would not inevitably be a part of that administrative process, although it might be permitted to participate as an interested person. 45 C.F.R. § 1658. This Court cannot turn away the plaintiff when the plaintiff itself does not have a review process.

## ESTOPPEL

The undisputed facts of this case show that not until January and February 1977, did the federal defendant notify the plaintiff or the state defendant that it might disallow Medicaid funds for the period November 1, 1975, to November 30, 1976. The plaintiff did receive a letter on September 25, 1975, which indicated that the certification requirements were the same for Medicare and Medicaid, Record at 2593, but this letter did not indicate that the plaintiff accepted the funds subject to a risk that the federal defendant might retroactively decertify the plaintiff as a Medicaid provider and order recoupment of the payments.

During the period in dispute, the federal defendant continued to provide the state defendant Medicaid grants that included an amount to cover the federal defendant's share of the services provided by plaintiff. The federal defendant must be charged with the knowledge that plaintiff was providing services to Medicaid patients during the period in dispute despite the uncertainty surrounding plaintiff's Medicare certification. Yet the federal defendant continued to provide the state with funds for use in connection with plaintiff's Medicaid provider agreement, without ever notifying the state or the plaintiff that such funds were being granted subject to a right to retroactive disallowance. Nor has the federal defendant referred this Court to any statute or regulation that should have put the plaintiff and state defendant on notice that retroactive disallowances are permitted.

■ On these facts, this Court holds that the federal defendant is estopped to deny the plaintiff's entitlement to have received the Medicaid funds during the period from November 1, 1975, to November 30, 1976, and is further estopped from disallowing from the state defendant the federal share of those funds.

Although the plaintiff is entitled to a judgment in its favor, plaintiff has not demonstrated the need for an injunction. Therefore, the relief granted will be limited to declaratory relief.

## POSTSCRIPT: STATE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On June 22, 1982, as this decision was being typed, the state defendant filed its own motion for summary judgment against the federal defendant. The state defendant makes the same arguments as made by the plaintiff and as were considered at the oral argument on June 4, 1982. Thus, the Court considers this motion untimely. Regardless of the timing of the motion, this decision renders the motion moot.

THEREFORE, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is granted and judgment shall be entered declaring that the Secretary of the United States Department of Health and Human Services is estopped from attempting to disallow from the Secretary of the Wisconsin Department of Health and Social Services monies that were used to pay for Medicaid services provided by Woodstock/Kenosha Health Center from November 1, 1975, to November 30, 1976, and that the Secretary of the Wisconsin Department of Health and Human Services may not recoup any payments made to Woodstock/Kenosha Health Center for Medicaid services rendered from November 1, 1975, to November 30, 1976.

2. Defendant Secretary of the United States Department of Health and Human Services's motion to dismiss the crossclaim of the defendant Secretary of the Wisconsin Department of Health and Social Services is denied.