**WOODSTOCK/KENOSHA HEALTH CENTER, Plaintiff-Appellee,**

v.

**Richard S. SCHWEIKER, Secretary of the United States Department of Health and Human Services, Defendant-Appellant.**

**WOODSTOCK/KENOSHA HEALTH CENTER, Plaintiff,**

v.

**Donald E. PERCY, Secretary of the Wisconsin Department of Health and Social Services, Defendant-Appellant,**

and

**Richard S. Schweiker, Secretary of the United States Department of Health and Human Services, Defendant-Appellee.**

Nos. 82–2375, 82–2435.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1983.

Decided July 19, 1983.

As Amended Aug. 5, 1983.

Rehearing and Rehearing En Banc Denied Oct. 26, 1983.

E. Thomas Creeron, III, Dept. of Justice, Madison, Wis., Joel M. Hamme, Pierson,

Ball & Dowd, Washington, D.C., for plaintiff-appellee.

Thomas W. Crawley, Dept. of Health & Human Services, Chicago, Ill., for defendant-appellant.

Before WOOD and CUDAHY, Circuit Judges, and WEIGEL, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

This matter is on appeal from the district court's determination that the government is estopped to decertify the plaintiff, Woodstock/Kenosha Health Center, as a provider under the Medicaid program. Although we find that the district court properly had jurisdiction over both the plaintiff's claim and the state's cross-claim, we hold that the district court erroneously applied the law of equitable estoppel and reverse the grant of summary judgment in favor of the plaintiff.

I.

This case concerns a rather convoluted set of facts relating to the government's effort to decertify the Woodstock/Kenosha Health Center (Woodstock) as a provider under both the Medicare and Medicaid programs.[1] Based upon surveys of the health care services and facilities provided by Woodstock/Kenosha, the State of Wisconsin initially recommended against renewal of Woodstock's *Medicare* provider agreement. Woodstock was notified of this decision by letter on September 25, 1975 by the regional director of what was then the federal Department of Health, Education and Welfare (now the Department of Health and Human Services). The letter informed Woodstock that the standards for participation in the *Medicare* program were the same as those governing participation in the *Medicaid* program. The letter further informed Woodstock that the state agency had been notified of the non-renewal decision.

During the reconsideration deliberations several other surveys of Woodstock's premises showed that deficiencies continued to exist. However, during this same period, state officials recommended that a short-term agreement be executed to extend Woodstock's Medicare certification until June 30, 1976. Although documents effectuating this recommendation were drafted, none were ever executed. At the end of July, 1976, after receiving additional survey data, the state survey agency recommended that Woodstock's certification be denied. The state survey agency eventually withdrew that negative recommendation based on a September 26, 1976 survey indicating compliance with the requirements of the Medicare program.

HHS ultimately denied Woodstock's request for reconsideration January 27, 1977. However, based on the recommendations of the state survey agency, HHS stated that Woodstock could be eligible for a *new* Medicare provider agreement effective December 1, 1976 if another state survey indicated compliance with the eligibility requirements. Ultimately, Woodstock received its new provider agreement. The effect of these proceedings was that Woodstock rendered no service to Medicare beneficiaries and received no *Medicare* reimbursements during the period of November 1, 1975 through November 30, 1976.

As a result of the decertification for this 13 month period, HHS attempted to retroactively decertify Woodstock under the *Medicaid* program for the same thirteen month period. When HHS denied Woodstock's request for reconsideration on its Medicare status on January 27, 1977, it simultaneously moved to decertify Woodstock under *Medicaid*. On February 24,

* The Honorable Stanley A. Weigel, Senior District Judge for the Northern District of California, is sitting by designation.

1. The facts are extensively set forth in the district court's opinion, *Woodstock/Kenosha Health Center v. Schweiker,* 542 F.Supp. 1210 (E.D.Wis.1982). An extended description of the Medicare and Medicaid programs can be found in *Americana Healthcare Corp. v. Schweiker,* 688 F.2d 1072 (7th Cir.1982), and *Northlake Community Hospital v. United States,* 654 F.2d 1234 (7th Cir.1981).

1977 Woodstock was notified that its certification as a Medicaid provider was retroactively terminated effective November 1, 1975. The amount of reimbursement already paid to Woodstock during the period of ineligibility totaled $683,416.27. The federal government seeks to recover the matching funds it paid to the State for this period which totaled approximately $400,000.

Following the decision of HHS to deny *Medicare* certification Woodstock sought a hearing before an Administrative Law Judge pursuant to 42 C.F.R. § 405.153D. On June 21, 1979 the ALJ held that Woodstock had been erroneously denied certification for the thirteen month period. HHS then sought review of that decision before the Appeals Council, which, on March 18, 1981, reversed the ALJ and held that the thirteen month *Medicare* decertification was proper.

On May 18, 1981 Woodstock brought suit in federal district court appealing the decision of the Appeals Council concerning their eligibility for the *Medicare* program, and seeking declaratory and injunctive relief against the threatened disallowance of *Medicaid* benefits for the same period. The district court rejected challenges to its jurisdiction and granted summary judgment to Woodstock holding that HHS was estopped to decertify Woodstock as a *Medicaid* provider. This appeal follows.

## II. JURISDICTION

HHS first challenges the subject matter jurisdiction of the district court to hear the challenge to the proposed retroactive Medicaid decertification. HHS argues that the district court only has jurisdiction to decide whether the decision of the Appeals Council was supported by substantial evidence. HHS contends that the provisions governing review of Medicare decisions are exclusive, and therefore bar any consideration of the consequences of these decisions on *Medicaid* benefits by the district court or this Court.

HHS misconstrues the nature of Woodstock's complaint which does seek review of the Medicare decision but also separately challenges the authority of the federal defendants to seek a retroactive disallowance of *Medicaid* benefits already paid. It is irrelevant that the case law unambiguously states that the Medicare review procedures are exclusive and preclude the application of general federal question jurisdiction. *See, e.g., United States v. Erika,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982); *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

The question before us is whether the district court has subject matter jurisdiction over a direct challenge to a proposed Medicaid disallowance. This is a question recently answered in the affirmative by this court, *State of Illinois v. Schweiker,* 707 F.2d 273 (7th Cir.1983), although it is a question explicitly left open by several of the other Circuits. *See, e.g., Commonwealth of Massachusetts v. Departmental Grant Appeals Board of the United States Department of Health and Human Services,* 698 F.2d 22 (1st Cir.1983); *State of New Jersey v. Department of Health and Human Services,* 670 F.2d 1284, 1290 n. 11 (3d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 56, 74 L.Ed.2d 60 (1982); *Medical Services Administration v. United States,* 590 F.2d 135 (5th Cir.1979).

■ Those other courts directly confronting this issue have held that the district courts do in fact have jurisdiction to decide the legality of a Medicaid disallowance. *See, e.g., County of Alameda v. Weinberger,* 520 F.2d 344 (9th Cir.1975); *State of Georgia v. Califano,* 446 F.Supp. 404 (N.D. Ga.1977). *See also State of Washington v. Schweiker,* No. 81–7414 (9th Cir.1981) (two judge motions panel dismissing petition to review disallowances stating "jurisdiction lies in the district court"). We agree with these decisions in that there is no evidence of congressional intent sufficient to defeat the strong presumption in favor of judicial review. *Barlow v. Collins,* 397 U.S. 159, 166–67, 90 S.Ct. 832, 837–38, 25 L.Ed.2d 192 (1970).

The federal defendants contend nonetheless that the decision of this Court in *Americana Healthcare Corp. v. Schweiker*, 688 F.2d 1072 (7th Cir.1982), divests the district court of jurisdiction to hear the challenge to the Medicaid disallowance. In *Americana Healthcare*, this Court heard the consolidated appeals of five health care facilities. Four of these facilities had sought, and received injunctive relief in the district court preventing their termination as *Medicare* providers and subsequent termination as Medicaid providers because of the lack of a predetermination hearing. *Id.* at 1074–79. This Court, relying on our previous decision in *Northlake Community Hospital v. United States*, 654 F.2d 1234 (7th Cir. 1981), and the Supreme Court's decision in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), held that 42 U.S.C. § 405(h) precluded the use of general federal question jurisdiction, 28 U.S.C. § 1331, "as a jurisdictional basis for challenging Medicare provider termination decisions." *Id.* at 1081.

■ It is urged that *Americana Healthcare* similarly applies to Medicaid decisions because of the fifth appeal consolidated therein which concerned a facility with only a *Medicaid* agreement. This argument is no longer tenable in light of our opinion in *State of Illinois v. Schweiker.* Further, we believe *Americana Healthcare* cannot be read this broadly. The subject matter jurisdiction of the district court to hear challenges to Medicaid decisions was never directly addressed. The section of *Americana Healthcare* dealing with federal question jurisdiction relies entirely on precedent and statutes dealing with the *Medicare* program. This conclusion is bolstered by the extensive reliance on the *Northlake* case, which concerns solely a Medicare provider

agreement. We therefore conclude that the district court properly had subject matter jurisdiction to hear the Medicaid claims in the instant case.[2]

■ The federal defendants also argue that the district court lacked jurisdiction over the State of Wisconsin's cross-claim against the threatened recoupment of Medicaid funds. The federal defendants contend that the State should be required to litigate its claim before the administrative grant appeals board under either the doctrine of primary jurisdiction or exhaustion of administrative remedies. Although these are separate and distinct doctrines, each is designed to promote judicial economy and to prevent the fragmentation of litigation involving agency decisions. To relegate the State to administrative remedies while allowing Woodstock to proceed with its claim would create the very fragmentation these doctrines seek to avoid.[3]

## III. ESTOPPEL

Based upon the government's conduct in the instant case, the district court held that the government was estopped to deny the plaintiff's entitlement to Medicaid funds during the period from November 1, 1975, to November 30, 1976. *Woodstock/Kenosha Health Center v. Schweiker*, 542 F.Supp. at 1214. We believe the district court incorrectly applied the doctrine of equitable estoppel to the facts of this case, particularly in view of the stringent requirements to apply this doctrine to government conduct.

■ The doctrine of equitable estoppel precludes a litigant from asserting an otherwise valid claim or defense where the other party has detrimentally altered its position in reasonable reliance on the for-

---

2. We also hold that the controversy is ripe for adjudication and that Woodstock and the State have standing to assert their claims.

3. It is unclear what, if any, administrative remedies would be available to the State or Woodstock. The federal government urges that the proper route would be to utilize 42 U.S.C. § 1316(d) which permits a State to seek reconsideration of a disallowance. This argument ignores the procedural posture of this case. Since the State challenges the *prospective* disallowance of these funds there is no disallowance from which to seek reconsideration. Also it is unclear whether Woodstock could participate in any administrative proceedings between the federal government and the State of Wisconsin.

mer's misrepresentation or failure to disclose a material fact. *Portmann v. United States,* 674 F.2d 1155, 1158 (7th Cir.1982). The key factor distinguishing estoppel of government, rather than private, entities is the risk of waiving the requirements of congressional enactments of public policy. *Best v. Stetson,* 691 F.2d 42 (1st Cir.1982). As a result estoppel traditionally never applied to government conduct no matter how compelling the circumstances. *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Utah Power and Light Co. v. United States,* 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917); *Lee v. Munroe,* 11 U.S. 366, 7 Cranch 366, 3 L.Ed. 373 (1813). Other espoused justifications for this harsh rule stemmed from notions of sovereign immunity and separation of powers, in addition to a pragmatic concern for protection of the public treasury. *See* Comment, *Equitable Estoppel of the Government,* 79 Colum.L.Rev. 551 (1979).

Although the lower courts have retreated from the strict application of this rule, the Supreme Court has never explicitly applied estoppel to government action. The Supreme Court has limited itself to the mere suggestion that estoppel may apply to affirmative conduct on the part of the government. *United States Immigration and Naturalization Service v. Hibi,* 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973); *Montana v. Kennedy,* 366 U.S. 308, 81 S.Ct. 1336, 6 L.Ed.2d 313 (1961). Most recently, the Supreme Court refused to estop the government based on the unauthorized representations of a government agent, leaving open the question of an exception for "affirmative misconduct." *Schweiker v. Hansen,* 450 U.S. 785, 786–87, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (*per curiam*).

This Court has recognized estoppel against the government in certain narrow circumstances. In *Portmann v. United States,* 674 F.2d 1155 (7th Cir.1982), decided about the time as the order was entered in this case and likely not brought to the attention of the trial judge, we reversed the district court's holding that estoppel could not apply as a matter of law against the government where a postal employee had erroneously told a customer that a certain type of insurance was available. In remanding for further proceedings, we set forth the factors to be considered:

> First, the party to be estopped must know the facts. Second, this party must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has a right to believe it is so intended. Third, the party asserting estoppel must have been ignorant of the facts. Finally, the party asserting estoppel must reasonably rely on the other's conduct to his substantial injury.

674 F.2d at 1167, citing, *TRW, Inc. v. FTC,* 647 F.2d 942, 950–51 (9th Cir.1981).

■ Under these criteria the district court erred in estopping the government to deny Medicaid eligibility. In deciding questions of estoppel the reasonableness of the reliance by the party asserting estoppel is the central inquiry. *Pratte v. NLRB,* 683 F.2d 1038 (7th Cir.1982). *See also* Comment, *Equitable Estoppel of the Government,* 79 Colum.L.Rev. at 558–63. Actual or constructive knowledge of the true state of affairs will defeat the reasonableness of the reliance. In this regard, the Supreme Court has held that such reliance is unreasonable when the relevant regulations are published in the Federal Register. *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. at 384–85, 68 S.Ct. at 3.

■ We fail to see any misrepresentation or failure to disclose a material fact sufficient to create the reasonable reliance necessary as a predicate to applying the doctrine of equitable estoppel. It is conceded that the government informed both Woodstock and the State of Wisconsin on September 25, 1975 of the decertification of Woodstock as an SNF provider under the Medicare program. In addition, the letter informed both parties that Woodstock was no longer eligible as an SNF under the Medicaid program because the requirements of the two programs were identical. Since that time the government has never represented that it would not seek retroactive disallowance. Further, it is unclear how

Woodstock has relied to its detriment on any conduct or failure to act on the part of the government.

It is one thing to make an exception and estop the government on behalf of a person dealing with the government on an infrequent basis faced with the interpretation of ambiguous rules and regulations. However, it is quite another matter to apply the same equitable doctrine to protect skilled professionals operating in their area of expertise with the government on an intimate and long-term basis. In this matter, the arguments against estoppel are all the stronger since Woodstock and the State seek to lay claim to a statutory entitlement whose very legitimacy is disputed by the government, as opposed to merely seeking the enforcement of a private contractual claim against the government. *See Federal Crop Insurance Corp. v. Merrill,* 332 U.S. at 384–86, 68 S.Ct. at 3–4, *Portmann v. United States,* 674 F.2d at 1165; *Gressley v. Califano,* 609 F.2d 1265 (7th Cir.1979).

The State of Wisconsin also argues that even if the doctrine of equitable estoppel is inapplicable, the district court's decision should be affirmed based on the doctrine of laches. Laches bars the assertion of a claim "where deferment of action to enforce claimed rights is prolonged and inexcusable and operates to ... [a party's] material prejudice." *Advanced Hydraulics, Inc. v. Otis Elevator Co.,* 525 F.2d 477, 479 (7th Cir.), *cert. denied,* 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975). We need not decide whether this doctrine also applies to governmental action in rejecting this claim. Laches is inapplicable to the instant case because of the lack of demonstrated material prejudice. Woodstock neither altered its position because of the delays in the administrative decision, nor was it harmed in any way by the fact that the government delayed announcing its intention to recoup the Medicaid funds.

## IV. RETROACTIVE DISALLOWANCE

If the Department of Health and Human Services is ultimately unable to take a retroactive disallowance against Woodstock and the State, such an infirmity must stem from a lack of authority, or the use of improper procedures, rather than the application of equitable estoppel. These other issues were not fully addressed by the district court. The holding of the district court is clearly based on estoppel and its comments on the authority of the Department to proceed retroactively at most suggest that the matter is an open question. We need not reach this issue in the disposition of this appeal. Without expressing any opinion on the subject, we remand this cause for a full determination of whether the Department is authorized to proceed retroactively versus the State and Woodstock in this case, and, if so, what is the scope of that authority both substantively and procedurally.

Similarly, we do not address the issues relating to whether the decision of the Appeals Council concerning Woodstock's SNF status under Medicare is supported by substantial evidence. This is an issue left wholly untouched by the district court. Any decision by this Court would be inconsistent with our appellate function and the statutory review scheme embodied in the statutes and regulations governing the Medicare program.

## V. CONCLUSION

The decision of the district court is affirmed in part and reversed in part. This cause is hereby remanded for further proceedings in accordance with this opinion. The parties shall bear their own costs.