Feb.   4th.               LEE *v.* MUNROE & THORNTON.

*Absent....*JOHNSON, *J. and* TODD, *J.*

The United
States are not
bound by the
declarations of
their agent,
founded upon
a mistake of
fact, unless it
clearly appear
that the agent
was acting
within the
scope of his
authority, and
was empow-
ered in his ca-
pacity of agent
to make such
declaration.

THIS was an appeal from the decree of the Circuit
Court for the district of Columbia, in a suit in Chance-
ry, brought by Lee against Thomas Munroe, superin-
tendant of the city of Washington, and William Thorn-
ton, the survivor of the late board of commissioners for
that city. The object of the bill was to obtain a dis-
count of 3,000 dollars upon a judgment, which Munroe,
as superintendant, had obtained against Lee upon his
bond. The ground upon which this set-off was claim-
ed, was this. Morris and Nicholson were indebted to
Lee in that sum by promissory notes, and offered pay-
ment in certain city lots, the title whereof was in the
commissioners of the city. Morris and Nicholson hav-
ing paid money in advance to the commissioners, were,
as they supposed, entitled to demand from them the con-
veyance of the lots in question, under existing contracts
between the commissioners and themselves. Whereupon
Lee applied to the commissioners to know of them whe-
ther they would convey the lots to him, upon the order
of Morris and Nicholson. This they promised to do,
and made an entry of it in their journal. Lee then
agreed with Morris and Nicholson to receive the lots in
payment, and upon receiving their order to the commis-
sioners to convey them to him, gave up to Morris and
Nicholson their notes for 3,000 dollars, which were the

evidence of the debt.    On presenting this order to the
commissioners, they refused to convey the lots, unless
he would pay them the purchase-money due thereon to
them from Morris and Nicholson, alleging that the ba-
lance was against Morris and Nicholson in their account
with the commissioners.    Morris and Nicholson short-
ly afterwards became insolvent.

<div align="right">
LEE
v.
MUNROE &
THORN-
TON.
</div>

**C. LEE,** *for the Appellant.*

This case cannot be distinguished from that of a mort-
gagee, who knowing another person is about to lend
money upon the mortgaged premises, informs him that
his mortgage is satisfied.    If it be not, he shall be post-
poned to the 2d mortgagee. 2 *Vern.* 554.   *Ibbottson v.*
*Rhodes.* 1 *P. Wms.* 394.   *Mocatta v. Murgatroyd.* 4
*Dall.    Levy v. Bank U. S.*

The Commissioners were acting within the scope of
their authority.    It was their business to keep the ac-
counts with Morris and Nicholson, and to know the ba-
lance ; it was also their business to convey the lots.    It
is immaterial what was the real state of accounts at the
time.    They acted at their peril.

The question is, who shall bear the loss ? Not he who
was in no fault, but he whose duty it was to know the
truth, and who by his negligence has brought this loss
upon the Plaintiff.

**JONES,** *contra.*

This case does not depend upon the principle of first
and second mortgagee.    The bill does not seek relief per-
sonally against the superintendent, or the surviving
commissioner, but is intended to charge the public with
this loss.    The commissioners were public officers; they
had no interest in the business.    It was a simple mis-
take of a fact on their part, which cannot bind the U.
States.    It is an attempt to set off unliquidated damages
incurred by these *public officers* against a judgment
debt.

*Feb. 26th....*LIVINGSTON, J. delivered the opinion of
the Court as follows :

LEE
*v.*
MUNROE &
THORN-
TON.

This is a bill seeking relief against public officers nominally, but against the United States in fact, for a mistake of the former in a representation made by them to the Appellant, by which it is alleged, that he has sustained a loss, for the redress of which in damages this suit is brought. It has been contended in this case, that the Defendants having, in their public character as commissioners of the city of Washington, misinformed the Plaintiff as to the state of the accounts between them and Morris and Nicholson, and thereby induced him to relinquish a demand which he had against the latter, he is now entitled to have discounted from a judgment, which they have obtained against him for the use of the United States, a sum equal to the principal and interest of the debt which he lost by the confidence which he placed in them ; and this is supposed to be like the case of a party, who being about to lend money on real estate, applies to one who holds a prior mortgage to ascertain whether he has any incumbrance on it. There is no doubt, in such a case, that if the person making the application discloses that he is about lending money on the estate, he will be preferred to the first mortgagee, should the latter deny his having a mortgage, or assert that it is satisfied; and it seems agreeable to the dictates of reason and good conscience, that his claim should be postponed to that of a person whose confidence was inspired by the misrepresentation of one, who was acting for himself, and every way competent to inform him of the truth. But in all the cases which have been decided on this principle, the fraud, for such it is supposed to be, has been practised by a party who has himself an interest in the subject-matter of inquiry, who cannot well be mistaken, and whose conduct therefore ought to be conclusive on him, when the rights of third persons come in question. It is, however, not known to the Court, that the same rule of decision has been extended so as to affect the interests of principals, and particularly of the public, in consequence of similar mistakes made by an agent, nor is it reasonable that such extension should take place, unless it most manifestly appear that the agent was acting within the scope of his authority, and was empowered, in his capacity of agent, to make the declaration or representation which is relied on as the ground of relief. In the present case, the Defendants were employed and authorized by the public to

sell and make contracts for the sale of certain lands ly-
ing within this district.    In pursuance of these powers,
they had made contracts with Morris and Nicholson,
who having advanced a considerable sum of money, were
in the habit of directing the Defendants from time to
time, to convey certain of the lots which they had con-
tracted for, to the persons named in such orders.    The
commissioners supposing that Morris and Nicholson had
not yet received titles to land equal in value to the sum
which they had advanced, told the Plaintiff that if he
would obtain an order from them for certain lots, they
should be conveyed to him.    But in a day or two after,
they discover that Morris and Nicholson had already re-
ceived deeds for lots to the whole amount of the sum
which they had advanced, and give notice of this fact to
the Plaintiff, offering however to convey to him the lots
in question, on his paying for them at the rate expressed
in their contract with Morris and Nicholson.    The Court
will not inquire whether the Plaintiff really suffered any
injury from the confidence which he placed in the com-
missioners, or whether he lost his remedy against Mor-
ris and Nicholson, (of which very serious doubts may
well be entertained) but a majority of the Judges are of
opinion, that the communication made by the commis-
sioners, to the plaintiff, was altogether gratuitous, and
that not being within the sphere of their official duties,
the United States cannot be injured by it, and that the
Defendants could not, without rendering themselves per-
sonally liable to the public, have made a title to the
Plaintiff after a discovery of the mistake which they
had made; but on the terms proposed by them; or in
other words, that the United States could not, by any
declaration of the commissioners proceeding from a mis-
take, lose the lien which was secured to them by the
contract with Morris and Nicholson, for the stipulated
price of this property.    If the commissioners acted
fraudulently, which is not pretended, they may be per-
sonally liable in damages to the Plaintiff; but if it were
a mistake, and such it is represented to be, the Court
has already said that the interests of the United States
cannot, and ought not, to be affected by it.    Were it
otherwise, an officer entrusted with the sales of public
lands, or empowered to make contracts for such sales,
might by inadvertence, or incautiously giving informa-
tion to others, destroy the lien of his principals on very

VOL. VII.                    48

<div style="float:left">LEE

*v.*

MUNROE &

THORN-

TON.

————</div>

valuable and large tracts of real estate, and even pro-
duce alienations of them without any consideration
whatever being received. It is better that an individual
should now and then suffer by such mistakes, than to
introduce a rule against an abuse, of which, by impro-
per collusions, it would be very difficult for the public
to protect itself. It is the opinion of this Court, that the
decree of the Circuit Court be affirmed.