**William E. WOODMAN, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

**No. 00–3414.**

United States Court of Appeals, Federal Circuit.

July 27, 2001.

Rehearing and Rehearing En Banc Denied Oct. 2, 2001.

Jason M. Weinstock, Ira H. Weinstock, P.C., of Harrisburg, PA, argued for petitioner.

Marian E. Sullivan, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With her on the brief were David M. Cohen, Director; and Robert E. Kirschman, Assistant Director. Of counsel on the brief was Eric S. Gold, Office of General Counsel, Office of Personnel Management, of Washington, DC.

Before CLEVENGER, SCHALL, and BRYSON, Circuit Judges.

SCHALL, Circuit Judge.

William E. Woodman petitions for review of the final decision of the Merit Systems Protection Board ("Board") that denied his appeal of the decision of the Office of Personnel Management ("OPM") that found him ineligible for reemployment rights under the Uniformed Services Employment and Reemployment Rights Act of 1994, Pub.L. No. 103–353, 108 Stat. 3149 (codified as amended at 38 U.S.C. §§ 4301–4333 (1994 & Supp. II 1996)) ("USERRA"). We affirm.

## BACKGROUND

Mr. Woodman joined the federal civilian workforce as a National Guard Technician ("NGT") with the Pennsylvania National Guard ("PNG") in July of 1976. Prior to that time, he had completed six years of active duty military service. Five years later, in July of 1981, Mr. Woodman left civilian service as an NGT and voluntarily accepted an appointment to a two-year tour of duty as a member of the Active Guard Reserve ("AGR") with the PNG. Mr. Woodman's appointment was pursuant to 32 U.S.C. § 502(f) (1994).[1] He entered the AGR at the rank of Major. In June of 1983, Mr. Woodman agreed to an extension of his AGR tour of duty until May 31, 1986, another three years. In April of 1986, he again extended his AGR tour of duty, this time until September 30, 1990. Finally, in 1990, he agreed to extend his AGR tour of duty indefinitely. On February 1, 1995, the Adjutant General of Pennsylvania notified Mr. Woodman that he would be involuntarily separated from his AGR position effective June 30, 1995, because as of that date he would have completed 20 years of active duty service.[2] On June 30, 1995, Mr. Woodman was separated from the AGR and retired from the military at the rank of Lieutenant Colonel. Since that date, he has been receiving retirement benefits as a retired military officer.

On May 30, 1995, Mr. Woodman filed a written request with the Adjutant General seeking to exercise reemployment rights under USERRA as an NGT. On June 8, 1995, the Adjutant General denied Mr. Woodman's request, finding that reemployment would be impossible and unreasonable because of his military retirement status. On November 1, 1995, Mr. Woodman attempted to invoke reemployment rights under USERRA by requesting that OPM place him in a position comparable to his NGT position in another federal agency, in accordance with 38 U.S.C. § 4314(d) (1994). OPM denied Mr. Woodman's request in a letter dated January 29, 1996, stating that he was not eligible for mandatory placement under § 4314(d) because he was a career member of the military.

In due course, Mr. Woodman requested assistance from the Department of Labor's Veterans Employment and Training Services ("VETS"), pursuant to 38 U.S.C. § 4321 (1994) and 5 C.F.R. § 353.210 (1997), which provide for VETS assistance with respect to employment and reemployment rights for any veteran who requests assistance. Pursuant to 38 U.S.C. § 4322(a)(2)(B) (1994), VETS filed a complaint against OPM with the Office of Special Counsel ("OSC"). Pursuant to 38 U.S.C. § 4324(a)(2)(A) (1994), OSC is authorized to provide legal representation to a person seeking federal reemployment under USERRA if it determines that OPM erred in denying the person reemployment rights.

On May 29, 1998, OSC notified OPM that it was contemplating legal action before the Board in Mr. Woodman's case, and it invited OPM to supply it with an opinion on the matter. In response, OPM provided its analysis of the situation, ex-

---

1. Under 32 U.S.C. § 502(f), a member of the National Guard may be ordered to active duty to perform training or other service. The orders may be pursuant to the member's wishes, or they may be pursuant to the direction of the military.

2. Pursuant to statute, a military officer must retire upon reaching 20 years of service, if not promoted to a higher rank. 10 U.S.C. §§ 14506, 14513 (1994).

plaining that it did not believe that Mr. Woodman qualified for reemployment under USERRA because of his career in the military. OPM stated that Mr. Woodman's voluntary acceptance of continuous and successive AGR tours of duty, as well as his voluntary retirement from the military, established a career in the uniformed service, disqualifying him for reemployment rights under USERRA. Following review of OPM's response, OSC concluded that Mr. Woodman had abandoned his civilian position in favor of a career in the military, thereby waiving his right to reemployment in the federal civilian workforce. Therefore, on November 6, 1998, OSC informed Mr. Woodman that it would not prosecute his case before the Board. Following receipt of OSC's letter, Mr. Woodman timely appealed to the Board without VETS' assistance, pursuant to 38 U.S.C. § 4324(b)(4) (1994) ("A person may submit a complaint against a Federal executive agency or the Office of Personnel Management under this subchapter directly to the Merit Systems Protection Board if that person has received a notification of a decision from the Special Counsel [declining representation].").

Following a hearing, the administrative judge to whom the appeal was assigned issued an initial decision sustaining OPM's denial of Mr. Woodman's USERRA claim. *Woodman v. Office of Pers. Mgmt.*, PH–3443–99–0075–I–1 (M.S.P.B. May 28, 1999). The administrative judge determined that Mr. Woodman's entitlement to reemployment rights under USERRA depended upon whether his 14 years of AGR duty constituted career or non-career military service. The administrative judge de-

nied Mr. Woodman's appeal because she concluded that "the record as a whole supports a conclusion that the appellant's service was career service and his arguments to the contrary are not persuasive." *Woodman*, slip op. at 11. The administrative judge's initial decision became the final decision of the Board on June 30, 2000, when the full Board denied Mr. Woodman's petition for a hearing for failure to meet the criteria for review set forth in 5 C.F.R. § 1201.115(d) (1999). This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (1994).

## DISCUSSION

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1994); *Fernandez v. Dep't of the Army*, 234 F.3d 553, 555 (Fed.Cir.2000).

### I.

■ Prior to 1994, reemployment rights for veterans were set forth in the provisions of the Veterans' Reemployment Rights Act of 1974, Pub.L. No. 93–508, 88 Stat. 1578 (codified as amended at 38 U.S.C. §§ 2021–2027 (1988 & Supp. III 1991)) ("VRRA").[3] *See* H.R.Rep. No. 103–65, 103rd. Cong.2d Sess. 18, *reprinted in* 1994 U.S .C.C.A.N. 2449, 2451. VRRA ensured that a person desiring to perform military service

---

**3.** VRRA was re-codified at 38 U.S.C. §§ 4301–4307 (Supp. IV 1992) in October of 1992. Pub.L. No. 102–568, § 506(a), 106 Stat. 4320. For the sake of clarity and to

avoid confusion with the codification of US-ERRA, we will cite to the pertinent sections of VRRA in accordance with the pre–1992 codification.

shall upon request be granted a leave of absence by such person's employer for the period required to perform active duty for training or inactive duty training in the Armed Forces of the United States. Upon such employee's release from ... [duty], such employee shall be permitted to return to such employee's position with such seniority, status, pay, and vacation as such employee would have had if such employee had not been absent for such purposes.

38 U.S.C. § 2024(d) (1988). When considering USERRA, Congress stated that VRRA "safeguard[ed] employment and reemployment rights in civilian employment of members of the uniformed services." H.R.Rep. No. 103–65 at 18, 1994 U.S.C.C.A.N. at 2451.

In 1990, Congress initiated a review of the efficacy of VRRA. In light of its review, Congress enacted USERRA "to clarify, simplify, and where necessary, strengthen the existing veterans' employment and reemployment rights." H.R.Rep. No. 103–65 at 18, 1994 U.S.C.C.A.N. at 2451. Congress stated that revisions of VRRA were necessary because "[a]lthough the law has effectively served the interests of veterans, members of the Reserve Components, the Armed Forces and employees, the current statute is complex and sometimes ambiguous, thereby allowing for misinterpretations." *Id.* The purposes of USERRA are set forth in 38 U.S.C. § 4301:

(a) The purposes of this chapter are

(1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;

(2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and

(3) to prohibit discrimination against persons because of their service in the uniformed services.

(b) It is the sense of Congress that the Federal Government should be a model employer in carrying out the provisions of this chapter.

38 U.S.C. § 4301 (1994). USERRA is intended to apply to those serving on active duty and active duty for training. It also covers full-time National Guard duty. *See* 38 U.S.C. §§ 4303(13), (16) (1994).

Reemployment rights under USERRA are available for any person who can meet the criteria of § 4312(a):

[A]ny person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if

I. the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written or verbal notice of such service to such person's employer;

II. the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years; and

III .... the person reports to, or submits an application for reemployment to, such employer....

38 U.S.C. § 4312(a) (Supp. II 1996). Section 4314(d) is the provision of USERRA which covers individuals who satisfy the basic requirements set forth in 4312(a) and who served in a civilian capacity as NGTs prior to entering into military service. Section 4314(d) provides as follows:

> If the adjutant general of a State determines that it is impossible or unreasonable to reemploy a person who was a National Guard Technician employed under Section 709 of Title 32, such person shall, upon application to the Director of the Office of Personnel Management, be ensured an offer of employment in an alternative position in a Federal executive agency on the basis described in subsection (b).

38 U.S.C. § 4314(d) (1994). As seen above, it was pursuant to this provision that Mr. Woodman sought employment in the federal civilian workforce after he was told that he would not be reemployed by the PNG.

In enacting USERRA, Congress stated that "[n]ew section 4301 of title 38 would state that the purpose of chapter 43 is to encourage noncareer service in the uniformed services.... The Committee intends this section to be helpful to courts construing the statute. Although current law does not contain an express statement of purpose, the Committee believes that the principles enunciated in new section 4301 have served as a basis for the VRR law since its beginning in 1940." S.Rep. No. 103–158, 103rd Cong. 1st. Sess., 40 (1993); *see also* H.R.Rep. No. 103–65 at 18, 1994 U.S.C.C.A.N. at 2460 ("employment and reemployment rights are intended to protect non-career servicepersons" regardless of active or non-active duty). We conclude that Congress intended both VRRA and USERRA to apply only with respect to non-career military service. Decisions under VRRA are not inconsistent with this conclusion.

In *King v. St. Vincent's Hospital,* 502 U.S. 215, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991), the employee sought a three-year leave of absence from his employment to take a full-time appointment with the National Guard. The employer denied the request and sought a declaratory judgment that the request was unreasonable. The Supreme Court held that it would not read a "reasonableness" limit on the length of a 38 U.S.C. § 2024(d) leave after which the employee would be entitled to reemployment. 502 U.S. at 222, 112 S.Ct. 570. In other words, the Court determined that there was no durational limit imposed on a "leave of absence" from employment under VRRA's § 2024(d). Therefore, King, who requested a three-year leave of absence from his employer, was entitled to reemployment rights upon his return to his civilian position under § 2024(d). The Court referred to VRRA as involving a "congressionally mandated leave of absence" from a civilian position. 502 U.S. at 220, 112 S.Ct. 570. In *Paisley v. City of Minneapolis,* 79 F.3d 722 (8th Cir.1996), the court determined that VRRA's reemployment rights did not extend to an employee who served in the military for over fourteen consecutive years. 79 F.3d at 725. The court in *Paisley* distinguished *King* by noting that, while there was no durational requirement under § 2024(d), there still could be a waiver of reemployment rights. *Id.* The *Paisley* court found that the employee had waived his reemployment rights by expressly resigning from his civilian position before completing his military service. *Id.* Because he had abandoned his civilian career for a career in the military, *id.* at 725 n. 5, the employee had waived his VRRA reemployment

rights. The court stated: "[T]here is a legally significant distinction between an intent to take a true leave of absence from civilian employment, the length of which is not subject to a reasonableness standard, and an intent to make the military a career, which suggests a choice to forsake one's civilian job and any reemployment rights attached thereto." 79 F.3d at 725 n. 5.

## II.

■ On appeal, Mr. Woodman recognizes that, in order to be eligible for reemployment rights under USERRA, a person must be absent from his civilian job due to military service for a period of less than five years. 38 U.S.C. § 4312(a)(2) (Supp. II 1996). He argues, however, that, because the provisions of USERRA took effect December 12, 1994, his reemployment rights did not expire until December 12, 1999. Therefore, his reemployment rights must be defined under VRRA up to and including December 12, 1994. VRRA, Mr. Woodman asserts, "places no limit on the length of a tour after which [an individual accepting a title 32 AGR appointment] may enforce his reemployment rights against [his employer]." *King,* 502 U.S. at 222, 112 S.Ct. 570. According to Mr. Woodman, because he applied for reemployment in 1995, well within the five-year limit, OPM erred in denying him USERRA reemployment rights under § 4312(a)(2).

■ We agree that Mr. Woodman's reemployment rights did not expire until December 12, 1999. Mr. Woodman's reemployment rights up to and including December 12, 1994 are defined by VRRA. OPM's own regulation states that time served in the military prior to December 13, 1994, will not count in computing the five-year limitation. *See* 5 C.F.R. § 353.203(b) (1997). However, as noted above, VRRA, like USERRA, only applied to non-career military service. The question before us then is whether the Board's conclusion that Mr. Woodman's AGR duty was career military service is supported by substantial evidence. We conclude that it is.

The Board's finding that Mr. Woodman had abandoned his federal civil service career for a military career is supported by substantial evidence because Mr. Woodman waived his reemployment rights by abandoning his civilian career in favor of one in the military. Mr. Woodman served continuously and repeatedly for fourteen years as a full-time member of the AGR. His service resulted in his eligibility for a regular retirement from the military. Importantly, the record indicates that he actively sought service extensions. As the Board stated, Mr. Woodman's "multiple and successive title 32 AGR tours ... would seem to indicate that [he] elected to make a career with the military." *Woodman,* slip op. at 12.[4]

The fact that Mr. Woodman never gave his employer a formal letter of resignation,

---

4. Although not binding for purposes of VRRA, USERRA's definition of non-career military status is instructive in understanding Mr. Woodman's position in the military. For purposes of USERRA, the Department of Defense defines non-career military service as:

The period of active uniformed service required to complete the initial uniformed service obligation; a period of active duty or full-time National Guard duty that is for a specific purpose and duration with no expressed or implied commitment for continued active duty; or participation in a Reserve component as a member of the Ready Reserve performing annual training, active duty for training or inactive duty training. Continuous or repeated active uniformed service or full-time National

as did the employee in *Paisley,* is not determinative of whether Mr. Woodman had a "career" in the military. Instead, Mr. Woodman's actions created a de facto resignation by indicating to PNG that he never intended to return to his civilian position. Mr. Woodman was separated from his NGT position in 1981, and he did not seek reemployment with the PNG as an NGT until nearly fourteen years later in 1995. Substantial evidence supports the Board's finding of career service.

## CONCLUSION

For the foregoing reasons, Mr. Woodman is not entitled to reemployment rights under either VRRA or USERRA. The decision of the Board therefore is

*AFFIRMED.*

No costs.

---

Guard duty that results in eligibility for regular retirement from the Armed Forces is not considered non-career service.

32 C.F.R. § 104.3 (1997). Mr. Woodman's participation in the military was "continuous" and "repeated," because he was eligible for and received military retirement benefits.