Richard T. KISZKA, Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT, Respondent.

No. 04–3038.

United States Court of Appeals, Federal Circuit.

DECIDED: June 22, 2004.

William Lafferty, Lafferty & Lafferty, of Burlington, MA, for petitioner.

Paul D. Kovac, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director and Deborah A. Bynum, Assistant Director. Of counsel on the brief was Melanie Watson, Attorney, Office of the General Counsel, Office of Personnel Management, of Washington, DC.

Before RADER, BRYSON, and LINN, Circuit Judges.

BRYSON, Circuit Judge.

Richard T. Kiszka appeals from a decision of the Merit Systems Protection Board, Docket No. SF–0831–02–0453–I–1, 94 M.S.P.R. 109, denying Mr. Kiszka's application for a retirement annuity under the Civil Service Retirement System ("CSRS"). We affirm.

I

Mr. Kiszka served in the United States Army from August 1965 through January 1966. He then served as a civilian technician in the Massachusetts Army National Guard ("MANG") from August 1972 through November 1984. In November 1984, Mr. Kiszka separated from MANG to enter full-time National Guard duty in the Active Guard/Reserve ("AGR"). Mr. Kiszka does not dispute that he was terminated from MANG and that he neither requested nor was given a leave of absence. Shortly after enrolling in AGR, Mr. Kiszka withdrew the contributions he had paid into CSRS during his tenure with MANG.

Mr. Kiszka served in AGR from November 1984 to May 1994, at which time he was re-appointed as a civilian technician in MANG. MANG characterized his 1994 appointment as a reemployment pursuant to the Veterans' Reemployment Rights Act ("VRRA"), 38 U.S.C. Chapter 43. After his appointment, Mr. Kiszka did not make a redeposit of the CSRS contributions he had previously withdrawn. Mr. Kiszka continued to work in MANG until 1999 when he reached age 55. At that time, he retired after being involuntarily separated from the National Guard upon reaching the mandatory retirement age and time in rank. See 10 U.S.C. §§ 14506, 14513.

Shortly before his retirement, Mr. Kiszka filed an application for CSRS benefits. He claimed that he had a total of more than 27 years of federal service (four months in the Army, almost 10 years in AGR, and almost 18 years in MANG). OPM made interim annuity payments to Mr. Kiszka for two years, but eventually denied his application in February 2002. OPM then demanded that Mr. Kiszka repay the $54,966 in interim annuity payments that it had made while his application was under consideration.

OPM denied Mr. Kiszka's application for retirement for several reasons. Pertinent to this appeal, OPM first determined that Mr. Kiszka's service in AGR was not creditable toward his retirement. According to 5 U.S.C. § 8331(13), creditable military service "does not include service in the National Guard except when ordered to

active duty in the service of the United States or full-time National Guard duty ... if such service interrupts creditable civilian service under this subchapter and is followed by reemployment in accordance with chapter 43 of title 38." OPM determined that Mr. Kiszka's return to service with MANG was not a reemployment because he was not on a leave of absence from MANG when he served in AGR but instead was separated. Thus, according to OPM, Mr. Kiszka's time in AGR did not "interrupt[ ] creditable civilian service ...," 5 U.S.C. § 8331(13). OPM further determined that, even though MANG characterized Mr. Kiszka's return as a reemployment, "[a]n erroneous action by an agency cannot create a right to benefits to which an individual would otherwise not be entitled." OPM also ruled that by obtaining a refund of the contributions he made to CSRS while he was employed by MANG, Mr. Kiszka negated his eligibility for retirement benefits based on the time covered by the refund. OPM concluded that "the statute governing civil service refunds [5 U.S.C. § 8342(a)] bars credit for periods of service covered by a refund unless an employee returns to Federal employment and renews eligibility to receive civil service benefits based on a subsequent separation."

On Mr. Kiszka's request for reconsideration, OPM affirmed its initial decision. OPM reiterated that Mr. Kiszka was not entitled to be treated as having been reemployed by MANG because he was separated from MANG rather than being on a leave of absence.

Mr. Kiszka appealed OPM's decision to the Merit Systems Protection Board. The administrative judge who was assigned to the case reversed OPM's decision. The administrative judge ruled that there was no evidence that Mr. Kiszka intended to make a permanent career of his active duty service in the National Guard or "in any manner [made] an affirmative waiver of his reemployment rights under the VRRA." Moreover, even though Mr. Kiszka did not take a leave of absence from his civilian position, the administrative judge ruled that "once a person meets the criteria for reemployment following military service, as [Mr. Kiszka] has here, the agency must consider him to have been on furlough or leave of absence during the period of military duty." In a footnote, the administrative judge added that Mr. Kiszka is entitled to credit for his previous civilian service even though he did not redeposit his earlier retirement contributions when he was reemployed. In such a case, the administrative judge stated, his annuity would be actuarially reduced based upon his age and the redeposit due at the time of his retirement.

OPM appealed the administrative judge's decision to the full Board, which reversed. The Board ruled that Mr. Kiszka was not entitled to reemployment with MANG after his service in AGR because when he left MANG he did not request a leave of absence. The Board concluded that "the plain language of [38 U.S.C. § 2024(d) (1974)] expressly conditioned the employee's right to be returned to civilian employment, under Title 38, on his having requested leave from his employer." The Board addressed Mr. Kiszka's argument that such a request would have been futile based on National Guard policy and concluded that "even if one or more government officials misinformed the appellant about the procedures to follow when leaving his civilian employment to begin his AGR service, any such misinformation would provide no basis for finding that the appellant is entitled to be treated as

though he had requested and obtained leave," since "the government cannot be estopped from denying benefits not otherwise permitted by law even if the claimant was denied monetary benefits because of his reliance on the mistaken advice of a government official." The Board noted that OPM did not challenge the administrative judge's decision that, if Mr. Kiszka is otherwise entitled to annuity, he is entitled to receive credit for his service during the time for which he received a refund of his contributions. Nevertheless, the Board concluded that "[u]nder 5 U.S.C. §§ 8334(d)(1) and 8342(a), such an action generally terminates an employee's right to any future retirement annuity based on the service covered by those contributions." The Board noted that it was not addressing OPM's argument that Mr. Kiszka forfeited his reemployment rights by abandoning his civilian career in favor of a career in the military.

Mr. Kiszka petitions this court for review of the full Board's decision.

## II

Mr. Kiszka argues that he was entitled to reemployment with MANG after his service in AGR, even though he did not request or receive a leave of absence from MANG prior to enrolling in AGR. The pertinent statute, 5 U.S.C. § 8336(d), provides:

(d) An employee who—

(1) is separated from the service involuntarily, except by removal for cause on charges of misconduct or delinquency

. . .

. . .

after completing 25 years of service or after becoming 50 years of age and com-

pleting 20 years of service is entitled to an annuity . . . .

Mr. Kiszka argues that, because he was involuntarily separated from MANG and he was over 50 years old when he was separated, he is entitled to an annuity if he completed 20 years of service. Mr. Kiszka asserts that if his 10 years in AGR and almost 18 years in MANG are all credited, he has completed more than 27 years of federal service. OPM responds that Mr. Kiszka's time in AGR should not be counted toward the requirement of 20 years of service, because it was not followed by "reemployment" in MANG.

Under 5 U.S.C. § 8332(c), military service may be creditable toward a CSRS annuity. Under 5 U.S.C. § 8331(13), however, the definition of "military service" does not include "service in the National Guard except when ordered to active duty in the service of the United States or fulltime National Guard duty . . . if such service interrupts creditable civilian service under this subchapter and is followed by reemployment in accordance with chapter 43 of title 38." If Mr. Kiszka's AGR service interrupted creditable civilian service and was followed by reemployment in accordance with chapter 43 of title 38, then his AGR service would fall within the definition of "military service" and would be creditable toward his annuity.

Because Mr. Kiszka sought reemployment in May 1994, his reemployment rights are governed by the Vietnam Era Veterans Readjustment Assistance Act of 1974, Pub. L. No. 93–508, 88 Stat. 1578 (codified as amended at 38 U.S.C. §§ 2021–27 (1988)) ("VRRA")[1]. Section 2024(d) of the VRRA governed Mr. Kiszka's reemployment rights:

---

1. The VRRA was later recodified at 38 U.S.C. §§ 4301–07 (Supp. IV 1992). *See* Pub. L. No.

(d) Any employee not covered by subsection (c) of this section who holds a position described in clause (A) or (B) of section 2021(a) *shall upon request be granted a leave of absence by such person's employer for the period required to perform active duty for training or inactive duty training in the Armed Forces of the United States.*

Upon such employee's release from a period of such active duty for training or inactive duty training, . . . such employee shall be permitted to return to such employee's position with such seniority, status, pay, and vacation as such employee would have had if such employee had not been absent for such purposes.

Such employee shall report for work at the beginning of the next regularly scheduled working period after expiration of the last calendar day necessary to travel from the place of training to the place of employment following such employee's release, or within a reasonable time thereafter if delayed return is due to factors beyond the employee's control.

Failure to report for work at such next regularly scheduled working period shall make the employee subject to the conduct rules of the employer pertaining to explanations and discipline with respect to absence from scheduled work. . . .

38 U.S.C. § 2024(d) (1988) (emphasis added).

OPM argues that section 2024(d) requires that an employee request a leave of absence before that employee is entitled to reemployment rights. Mr. Kiszka disagrees, arguing that the words "shall upon request be granted a leave of absence"

were intended as a restriction on the employer rather than as a requirement of the employee. We have held, however, that the language of section 2024(d) requires that an employee seeking entitlement to reemployment must first request a leave of absence:

> It is incontrovertible that the first task in interpreting a statute is to look to its express language. In this case, the language "upon request" in Section 2024(d) can only mean that, barring an emergency or other special circumstances in which the country needs to call up its reserves, an employee must request, i.e., ask for, a leave of absence to attend reserve duty.

*Ellermets v. Dep't of the Army,* 916 F.2d 702, 705 (Fed.Cir.1990).

Mr. Kiszka argues that decisions of this court and others suggest that an employer cannot abrogate an employee's right to reemployment by terminating the employee. In *Woodman v. Office of Personnel Management,* 258 F.3d 1372, 1377 (Fed. Cir.2001), we noted that the Supreme Court, in *King v. St. Vincent's Hospital,* 502 U.S. 215, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991), characterized section 2024(d) of the VRRA as involving a "congressionally mandated leave of absence." Mr. Kiszka also argues that the Fourth Circuit in *Kolkhorst v. Tilghman,* 897 F.2d 1282, 1286 (4th Cir.1990), characterized the language of section 2024(d) as "unequivocal and unqualified."

The cases Mr. Kiszka cites do not support the proposition that an employee who does not request a leave of absence may nevertheless be entitled to reemployment. In *King* the Supreme Court did not dis-

102–568, § 506(a), 106 Stat. 4320, 4340 (1992). We have used the old section numbers that were used in the OPM and Board decisions.

cuss the requirements that an employee must meet to establish reemployment rights in the first place. Rather, the Court addressed whether an employee who would otherwise be entitled to reemployment rights can waive the right to reemployment by spending too much time on active duty. The Court decided that the employee, who had requested a leave of absence, did not waive his reemployment rights after spending three years in AGR. The Court reasoned that section 2024(d) "places no limits on the length of a tour after which [an employee] may enforce his reemployment rights...." *King,* 502 U.S. at 222, 112 S.Ct. 570.

In *Woodman,* we addressed the issue of abandonment of reemployment rights in light of *King.* In deciding that Mr. Woodman's multiple tours in AGR over 14 years indicated an abandonment of his reemployment rights in favor of a career in military service, we explained:

> The fact that Mr. Woodman never gave his employer a formal letter of resignation ... is not determinative of whether Mr. Woodman had a "career" in the military. Instead, Mr. Woodman's actions created a de facto resignation by indicating to PNG that he never intended to return to his civilian position. Mr. Woodman was separated from his NGT position in 1981, and he did not seek reemployment with the PNG as an NGT until nearly fourteen years later in 1995.

*Woodman,* 258 F.3d at 1378–79. Instead of supporting Mr. Kiszka's position, the reasoning in *Woodman* suggests that a resignation can result in a loss of reemployment rights. Nor does *Kolkhorst* support Mr. Kiszka's position. In *Kolkhorst,* the Fourth Circuit addressed a different issue—whether, once an employee requests a leave of absence for active reserve training, the employer is free to refuse the request. 897 F.2d at 1286. Thus, *Kolkhorst* does not address the scope of the employee's reemployment rights when the employee has not made a leave request.

Mr. Kiszka also argues that the legislative history of VRRA's successor statute, the Uniformed Services Employment and Reemployment Rights Act of 1994, Pub. L. 103–353, 108 Stat. 3149 (codified as amended at 38 U.S.C. §§ 4301–33 (1994 & Supp. II 1996)) ("USERRA"), supports his position. In particular, Mr. Kiszka points to the House Report on the 1994 Act, which stated that the purpose of section 4315(b) of that Act was to "reaffirm that a departing service person is to be placed on a statutorily-mandated military leave of absence while away from work, regardless of the employer's policy. Thus, terminating a departing service person, or forcing him or her to resign, even with a promise of reemployment, is of no effect." H.R.Rep. No. 103–65, at 33 (1994), *reprinted in* 1994 U.S.C.C.A.N. 2449, 2466. The quoted material from the legislative history does not address whether section 2024(d) requires that an employee request a leave of absence as a condition of being entitled to reemployment rights. Rather, it simply recognizes that an employer cannot circumvent an employee's right to reemployment through a policy of denying leaves of absence.

The Board noted several differences between section 2024(d) of the VRRA and sections 2024(a)-(c) that further suggest that section 2024(d) requires an employee to request a leave of absence. First, sections 2024(a)-(c) do not include the language "shall upon request be granted a leave of absence." Second, sections 2024(a)-(c) include limits on the amount of time an employee can spend in military

service before losing the right to reemployment. In *King*, the Supreme Court noted that difference and explained:

> Thus, § 2024(a) currently gives enlistees at least four years of reemployment protection, with the possibility of an extension to five years and even longer. Again, for example, § 2024(b)(1) extends protection to those entering active duty (except for "the purpose of determining physical fitness [or] for training") for at least four years, with the possibility of a further extension beyond that. Given the examples of affirmative limitations on reemployment benefits conferred by neighboring provisions, we infer that the simplicity of subsection (d) was deliberate, consistent with a plain meaning to provide its benefit without conditions on length of service.

502 U.S. at 220–21, 112 S.Ct. 570. The Court's reasoning suggests that we should infer from the presence of the language "shall upon request be granted a leave of absence" in section 2024(d), and its corresponding omission from sections 2024(a)-(c), that Congress deliberately added the requirement of requesting a leave of absence in cases governed by section 2024(d). Moreover, as the Board noted, section 2024(d) includes a requirement, not present in sections 2024(a)-(c), that employees on leaves of absence must report promptly to their employers upon completion of the military service, and that failure to do so would have consequences. Thus, the statute does not contemplate that an employee is automatically granted a leave of absence without the need to request one.

Mr. Kiszka asserts that in 1984 the National Guard's policy was to separate employees entering AGR rather than grant them leaves of absence, and that he did not request a leave of absence because it would have been futile to do so. OPM responds that even if a government official had misinformed Mr. Kiszka regarding his right to a leave of absence, the government cannot now be estopped from denying Mr. Kiszka reemployment rights. *See Office of Pers. Mgmt. v. Richmond,* 496 U.S. 414, 419–20, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) ("[E]quitable estoppel will not lie against the Government as against private litigants. In *Lee v. Munroe & Thornton,* 11 U.S. 366, 7 Cranch 366, 3 L.Ed. 373 (1813), we held that the Government could not be bound by the mistaken representations of an agent unless it were clear that the representations were within the scope of the agent's authority."); *see also Schism v. United States,* 316 F.3d 1259, 1284 (Fed.Cir.2002) (en banc). A National Guard policy of refusing requests for leaves of absence (rather than just the misstatement of a government official) might, in some circumstances, merit a finding that such a request would be futile. However, Mr. Kiszka provides no evidence, other than his assertions, that MANG had such a policy at the time of his separation and that it applied that policy in his case.

Thus, Mr. Kiszka has not shown that he was entitled to reemployment with MANG, and consequently he has not shown that his AGR service interrupted creditable civilian service. He has therefore not shown that he is entitled to a CSRS annuity under 5 U.S.C. § 8336(d). Because Mr. Kiszka cannot show that he had 20 years of service apart from his time in AGR, we need not address whether the withdrawal of his retirement contributions precludes crediting the time covered by those contributions. Nor do we reach the question whether, under *Woodman v. Office of Personnel Management,* 258 F.3d 1372 (Fed. Cir.2001), Mr. Kiszka forfeited his reem-

ployment rights by abandoning his civilian career in favor of a career in the military.

*AFFIRMED.*