# United States Court of Appeals for the Federal Circuit

04-3061

DAVID MORAVEC,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Joseph M. Codega, of Cranston, Rhode Island, argued for petitioner.

David A. Harrington, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. On the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, James M. Kinsella, Deputy Director, and Cristina C. Ashworth, Trial Attorney. Of counsel was Earl Sanders, Office of the General Counsel, Office of Personnel Management, of Washington, DC.

Appealed from:    United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

04-3061

DAVID MORAVEC,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

_____

DECIDED:  December 22, 2004
_____

Before RADER, DYK, and PROST, <u>Circuit Judges</u>.

PROST, <u>Circuit Judge</u>.

The petitioner, David Moravec, asks this court to review the final decision of the Merit Systems Protection Board ("the Board") denying his appeal of the Office of Personnel Management ("OPM") decisions rejecting his claim for full annuity benefits under the Civil Service Retirement System ("CSRS") and requiring him to repay $18,190.30 in annuity benefits that he received in error.  <u>Moravec v. Office of Pers. Mgmt.</u>, Docket No. BN831M010205-I-1 (M.S.P.B. Sept. 8, 2003) ("Final Decision").  Because the Board's decision was not arbitrary, capricious, an abuse discretion, otherwise not in accordance with the law, or unsupported by substantial evidence, we affirm.

## BACKGROUND

Mr. Moravec served as a civilian reserve technician in the Rhode Island Army National Guard ("RIARNG") between October 25, 1964 and January 1, 1980.  On

January 17, 1980, he was placed on leave without pay ("LWOP") by the RIARNG. On January 1, 1982, he was formally separated from his civilian position in the RIARNG. Between January 1, 1980 and May 31, 1998, he served on active guard reserve ("AGR") duty in the RIARNG. The petitioner returned to a civilian reserve technician position from June 1, 1998 until he lost his membership in the RIARNG on February 27, 2000 as a result of reaching the age of sixty. Two days later, he was separated from his position a second time because he could no longer meet his position's requirement of membership in the RIARNG. In all, the petitioner spent eighteen years and five months on continuous AGR duty in the RIARNG and sixteen years and ten months as a civilian reserve technician in the RIARNG. Because two years of the continuous eighteen years and five months spent by Mr. Moravec in the AGR were spent on LWOP from his civilian position, OPM granted Mr. Moravec CSRS credit for those two years.[1]

The day he was separated from his position as a civilian reserve technician for the second time, Mr. Moravec applied for immediate retirement under the CSRS. In order to qualify for full retirement benefits under the CSRS, the petitioner was required to have served for a period of twenty years in the civil service. 5 U.S.C. § 8336(b) (2004). The OPM originally accepted Mr. Moravec's application and began making annuity payments to him. But after paying $18,190.30 in annuity payments, the OPM reversed course and notified the petitioner by letter on March 5, 2001 that it was denying his application for CSRS retirement benefits. The OPM informed Mr. Moravec

---

[1] Because of military service performed prior to 1980, Mr. Moravec is credited with having served eighteen years in the military even after his two years on LWOP are subtracted from his military service. For our purposes, we will consider Mr. Moravec to have spent sixteen years and five months in continuous AGR service.

that his active military service in the RIARNG from January 1, 1982 to May 31, 1998 was not creditable towards his civil service retirement benefits because he did not have valid reemployment rights under either the Veterans' Reemployment Rights Act ("the VRRA") found in 38 U.S.C. § 2021-27 or the Uniformed Services Employment and Reemployment Rights Act ("USERRA") found in 38 U.S.C. § 4301-33 and, as a result, he did not qualify for the immediate annuity available to him at age sixty after twenty years of service. In a separate letter dated March 7, 2001, the OPM further requested that Mr. Moravec repay the annuity payments that he had erroneously received to date. Mr. Moravec responded in a March 16, 2001 letter to the OPM requesting reconsideration and a waiver of his debt. On July 12, 2001, the OPM again denied Mr. Moravec's request for an immediate CSRS retirement annuity based on his combined civilian and AGR service. OPM also denied his request for waiver of his debt. On July 25, Mr. Moravec again asked for a waiver of his debt on the grounds that he was not at fault for the erroneous annuity payments and that equity and good conscience would justify waiving his debt. No answer from the OPM to this final waiver request is found in the record.

After being denied an immediate CSRS annuity and waiver of his debt, the petitioner filed an appeal with the Board. After a hearing, the Board's administrative judge issued an initial decision upholding the OPM's reconsideration decision. Moravec v. Office Pers. Mgmt., Docket No. BN831M010205-I-1, slip op. at 13-14 (M.S.P.B. Dec. 28, 2001) ("Initial Decision"). Mr. Moravec then petitioned for review of the administrative judge's ruling on the annuity and waiver issues. The Board, after reviewing Mr. Moravec's case, issued a final decision affirming the administrative

judge's decision and denying Mr. Moravec's appeal of the OPM's decisions relating to his annuity and waiver claims. Final Decision.

Mr. Moravec timely appealed the Board's decision to this court. We have jurisdiction to resolve this case under 28 U.S.C. § 1295(a)(9).

DISCUSSION

We must set aside any Board decisions that are:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (2) obtained without procedures required by law, rule, or regulation having been followed; or
>
> (3) unsupported by substantial evidence.

5 U.S.C. § 7703(c) (2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).

On appeal, the petitioner alleges that the Board wrongly denied his request for a full and immediate CSRS retirement annuity by failing to count his military service for CSRS purposes. He also argues that even if we find that the Board correctly decided that he was not qualified for a CSRS retirement annuity at the age of sixty, his debt for the erroneously paid annuity benefits should nevertheless be waived.

A. Mr. Moravec's Claim to a CSRS Retirement Annuity

Mr. Moravec argues that he had valid reemployment rights at the time he left his AGR service and that service was, as a result, creditable towards his civil service retirement annuity. He argues that he properly exercised the reemployment rights conferred upon him by the VRRA within the time limits prescribed by USERRA. He

further argues that it is the VRRA that controls the disposition of reemployment rights in this case—and not USERRA, which, in his view, merely set a maximum time limit for non-civil service work on employees leaving civil service. Furthermore, he argues that he did not abandon his civilian career when he left his civilian position to enter AGR service.

The USERRA limits to five years the amount of time a member of the civil service can spend in military service while retaining reemployment rights and civil service benefits. 5 U.S.C. § 4312(c) (1994). As it states:

> [A] person who is absent from a position of employment by reason of service in the uniformed services [shall be eligible for civil service reemployment rights and benefits and other employment benefits] if such person's cumulative period of service in the uniformed services, with respect to the employer relationship for which a person seeks reemployment, does not exceed five years.

Id. By its terms, USERRA is not retroactive such that a civil servant who left the civil service prior to its 1994 enactment was limited to only five years of military service. Instead, USERRA only prospectively limited civil servants to five years of military service from its date of passage. Mr. Moravec was reemployed in 1998, within the five-year deadline set by USERRA. As we have previously held, his "reemployment rights did not expire until December 12, 1999. [His] reemployment rights up to and including December 12, 1994 are defined by VRRA." Woodman v. Office of Pers. Mgmt., 258 F.3d 1372, 1378 (Fed. Cir. 2001); see 5 C.F.R. § 353.203(b) (2004).

We have found, however, that Congress intended both VRRA and USERRA to distinguish between career and non-career military service for civil servants who leave their positions. See Woodman, 258 F.3d 1372. In Woodman, we found that the

"VRRA, like USERRA, only applie[s] to non-career military service." Id. at 1378. Accordingly, our inquiry in Woodman focused on whether the Board's finding that the petitioner's AGR service had constituted career military service was supported by substantial evidence. Id. In that case, we used indicia of the petitioner's intent to determine whether or not he had pursued career military service (as opposed to non-career service) and, thus, extinguished his reemployment rights with his civilian employer. Among the indicia used were the petitioner's continuous fourteen-year service as a full-time member of the AGR and his active pursuit of extensions of his AGR service. In the end, we concluded that "Mr. Woodman's actions created a de facto resignation by indicating to [his employer] that he never intended to return to his civilian position." Id. at 1379.

Three years after Woodman, we reaffirmed the core principle of Woodman in Kiszka v. Office of Personnel Management, 327 F.3d 1301 (Fed. Cir. 2004). Though we did not analyze an employee's rights under USERRA in Kiszka, we did use that case to re-assert the idea that "resignation can result in the loss of reemployment rights." Id. at 1306.

Mr. Moravec argues that the facts of this case are materially different from those in Woodman and, thus, compel a different result. He argues that Woodman, unlike him, was on active military duty long enough to qualify for full active duty military retirement benefits when he sought reemployment from his civilian employer. Secondly, he points out that, unlike Woodman who was denied reemployment, he was reemployed by his civilian employer. Third, he notes that he exercised his reemployment rights before the expiration of those rights (as determined by the five-year time limit established by

USERRA).[2]  While all of these facts are undoubtedly true, the petitioner reads our holding in Woodman too narrowly.  Our opinion in Woodman does not confine our holding to the facts presented in that case.  Using legislative history, we noted in Woodman that Congress's intent in enacting USERRA was to encourage non-career military service as opposed to career military service.  Id. at 1377.  We also noted that other courts had reduced the relevant inquiry regarding employment rights to whether or not the employee intended to "forsake one's civilian job" in order to start a military career.  Woodman, 258 F.3d at 1378 (citing Paisley v. City of Minneapolis, 79 F.3d 722, 725 n.5 (8th Cir. 1996)).  Ultimately, we decided that the key inquiry under both VRRA and USERRA was whether or not Woodman intended to make a career in the military after he left his civilian job.  Id.

Thus, in this case, our inquiry reduces to whether Mr. Moravec intended to pursue a career of service in the AGR or whether his service can be more properly characterized as a temporary non-career hiatus in his civil service career.  All of the Board's findings of fact in this inquiry are reviewed for substantial evidence.  5 U.S.C. § 7703(c).

The Board found that Mr. Moravec intended to pursue a career in the military after he left his civilian technician position to serve in the RIARNG AGR.  The Board relied on four different facts to arrive at this finding.  First, the Board noted that the length of the AGR service at issue for which Mr. Moravec was denied CSRS credit exceeds that of the petitioner in Woodman.  In this case, the relevant AGR service for

---

[2]    This does not distinguish him from Woodman however.  As we noted in Woodman, Woodman's reemployment rights did not expire by the time he requested reemployment from his civilian employer.  Woodman, 258 F.3d at 1378.

which Mr. Moravec was denied CSRS credit exceeds sixteen years, compared to fourteen years for Woodman. Second, the Board noted that the record reflected that Mr. Moravec returned to civilian employment shortly before his sixtieth birthday in order to retire as a civilian and receive a civilian pension—not because he felt himself to be returning to civilian employment after a temporary hiatus. Third, the Board noted that Mr. Moravec did not object to his 1982 separation from his civilian position and did not request to be placed on LWOP until February 9, 1994. Fourth, the Board noted that right before his 1982 separation from his position, the petitioner withdrew the funds that he had placed in his civil service pension fund and that such an act ordinarily terminates an employee's right to a future annuity and indicates an intention to terminate his civilian career. Final Decision at 8-9.[3] As the Board noted, the totality of these factors supported the proposition that Mr. Moravec intended to leave his civilian employment to start a career in the military. Though we have not articulated any one decisive factor to be used in determining an employee's entitlement to CSRS retirement benefits, we do note that the facts considered and used by the Board were correct and relevant ones in determining if Mr. Moravec was entitled to a CSRS annuity.

All of the Board's cited facts are amply supported by the record and, as a whole, amount to the substantial evidence necessary for this court to affirm the Board's conclusion that Mr. Moravec intended to pursue a career in the military. Accordingly,

---

[3] The Eighth Circuit has held that a withdrawal of retirement contributions "clearly indicat[ed] [the employee's] understanding that he had terminated his employment and [was moving] on to another career." Paisley, 79 F.3d at 725. Paisley is persuasive authority that we have considered in resolving this case.

we affirm the Board's determination that Mr. Moravec was not entitled to full CSRS annuity benefits.

## B. Waiver of Erroneously Paid Benefits

The second issue Mr. Moravec raises relates to the erroneously paid annuity benefits that he received prior to being notified by OPM that he was being denied the CSRS annuity that he had applied for. Mr. Moravec argues that since the mistaken payments were made through no fault of his own and because their repayment would cause him undue hardship, he ought to be entitled to a waiver of repayment on the grounds of "equity and good conscience" as established by 5 U.S.C. § 8346(b).

Section 8346(b) of Title 5 of the United States Code states:

> Recovery of payments under this subchapter may not be made from an individual when, in the judgment of the Office of Personnel Management, the individual is without fault and recovery would be against equity and good conscience.

5 U.S.C. § 8346(b) (2004). Two of the grounds that would constitute recovery against "equity and good conscience" are either that recovery would cause financial hardship for the person charged with the obligation of repayment or that the payee "relinquished a valuable right or changed positions for the worse" as a result of the erroneous payment. 5 C.F.R. § 831.1403(a)(1)-(2) (2004).[4] Financial hardship is defined in the regulations as arising when the payee "needs substantially all of his/her current income and liquid assets to meet ordinary and necessary living expenses and liabilities." 5 C.F.R. § 831.1404 (2004).

---

[4] The final alternative ground offered by the regulation is that "recovery would be unconscionable under the circumstances." 5 C.F.R. § 1403(3). The petitioner has not made any argument before this court that recovery of the erroneous annuity payments by OPM would be unconscionable.

As the administrative judge noted in the Board's initial decision, Mr. Moravec has significant liquid assets. Initial Decision at 13-14. The Board also took into account Mr. Moravec's monthly income and expenses in reviewing his financial status. Id. Only after such a review did the Board find that he did not need "substantially all of his/her current income and liquid assets to meet current ordinary and necessary living expenses and liabilities" and was therefore not entitled to a waiver of repayment on financial hardship grounds. Id. at 12-14. Furthermore, the Board found that Mr. Moravec made no showing that he detrimentally relied on the erroneous annuity payments. The findings of the Board regarding Mr. Moravec's request for waiver of repayment were not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. Furthermore, the Board's finding was supported by substantial evidence. Accordingly, given our standard of review, we cannot set aside the Board's decision.

## CONCLUSION

For the aforementioned reasons, the Board's denial of Mr. Moravec's appeal is affirmed.

## AFFIRMED