**Joseph W. ARTMANN, Petitioner,**

v.

**DEPARTMENT OF the INTERIOR, Respondent.**

No. 90–3349.

United States Court of Appeals, Federal Circuit.

Feb. 20, 1991.

Edwin L. Sisam, Minneapolis, Minn., submitted for petitioner.

Douglas J. Hughes, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., submitted, for respondent. With him on the brief, were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Stephen J. McHale, Asst. Director.

Before PLAGER and RADER, Circuit Judges, and FRIEDMAN, Senior Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The petitioner challenges his reassignment at the same grade and pay as a "constructive demotion" over which the Merit Systems Protection Board (Board) has appellate jurisdiction as a reduction in grade. The Board held it had no jurisdiction and dismissed the appeal, because the petitioner had not satisfied the criteria for establishing that a reassignment at the same grade constituted a "constructive demotion." *Artmann v. Interior*, 44 M.S.P.R. 443 (1990). We affirm.

I

The petitioner, Dr. Artmann, was a Senior Fish and Wildlife Biologist with the Fish and Wildlife Service (Service), who was the Federal Aid Chief in the Service's Minneapolis, Minnesota, regional office. The Federal Aid Chief position, to which Dr. Artmann had been appointed in 1982, was classified at grade GM–13.

In August 1988, after a wide-scale reorganization of the Service the previous year, the Service substituted for the Federal Aid Chief position the new position of Deputy Assistant Regional Director–Federal Aid at grade GM–14. It invited applicants for the new position, and Dr. Artmann applied. He was not selected, however. The Service then reassigned him to the position of Senior Staff Biologist, GS–13, at the same pay.

Dr. Artmann appealed his reassignment to the Board. He contended that at the time of the reassignment, the Federal Aid Chief position was erroneously classified at grade GM–13, either because its original classification at that grade in 1982 was improper or because, as a result of the increase in his duties, the position should have been reclassified to grade GM–14 before the reassignment; that he should have been noncompetitively promoted to the higher grade; and that his reassignment to another GM–13 position was a "constructive demotion," over which the Board had appellate jurisdiction as a reduction in grade.

After a hearing, the administrative judge dismissed the appeal for lack of jurisdiction. Applying the theory the Board had announced in *Russell v. Department of the Navy*, 6 MSPB 585, 6 M.S.P.R. 698 (1981), which subsequently has been called "constructive demotion," the administrative judge concluded that Dr. Artmann

has not shown that a classification error occurred when his position was last classified by a person with classification authority. Therefore, he has not shown that, at the time of his reassignment, the Federal Aid Chief position was entitled to a higher grade due to classification error. Nor did the appellant show that the agency's decision to upgrade the position was not a planned management action. Consequently, I conclude that the appellant did not carry his burden of establishing that he was constructively demoted. *Artmann v. Interior,* MSPB Docket No. CH07528910456, slip op. at 11 (Sept. 12, 1989).

The Board affirmed the decision of the administrative judge. After discussing the evidence and Dr. Artmann's contentions, the Board concluded that "there is a significant amount of evidence showing that the Federal Aid Chief position was upgraded due to the addition of duties and as a result of a reorganization in 1987, not because of a classification error", and that Dr. Artmann "failed to meet his burden to prove by a preponderance of the evidence that he was subjected to a constructive demotion under the theory of *Russell,* ... and thus that his appeal is within the Board's jurisdiction." *Artmann v. Interior,* 44 M.S. P.R. 443, 448 (1990).

## II

The Board has "only that jurisdiction conferred on it by Congress." *See Manning v. Merit Systems Protection Bd.,* 742 F.2d 1424, 1426 (Fed.Cir.1984). Accordingly, the Board has authority to hear appeals only from the types of actions specifically enumerated by law, rule, or regulation. 5 U.S.C. § 7701(a) (1988); *Rose v. Department of Health and Human Services,* 721 F.2d 355, 356 (Fed.Cir.1983).

Prior to the Civil Service Reform Act of 1978 (Reform Act), Pub.L. No. 95–454, 92 Stat. 1111, the Board's predecessor (the Civil Service Commission) had jurisdiction over appeals from a "reduction in rank." Under 5 U.S.C. section 7701 (1976), employees were authorized to appeal to the Civil Service Commission from an "adverse deci-

sion" under section 7512. The latter section authorized agencies to take "adverse action" against employees. Section 7511 defined "adverse action" to include a "reduction in rank or pay."

The Reform Act eliminated "reduction in rank" as an appealable action and instead gave the Board appellate jurisdiction over a "reduction in grade" and "reduction in pay." 5 U.S.C. § 7512 (1988). The Senate Committee Report explained the reason for this change:

The present statutory language includes a reference to "reduction in rank." This reference is deleted so as to eliminate reduction in rank as an appealable action. In 1944, when the procedural rights were first extended employees, thousands of positions were not covered by any position classification system. Consequently, where there was no reduction in compensation, it was necessary to look to something else, for example, the individual's relative standing in the agency's organizational structure, to determine whether an adverse action had been taken. However, all or most positions in the competitive service, with rare exception, are now covered by position classification or job-grading systems, with pay related directly to the grade of the position as determined under those systems. The concept of "rank" as a separate category of appealable actions is no longer necessary. This change will also more closely relate the protections afforded to the severity of the action taken. It will increase the flexibility of agencies to assign employees to positions and duties where they are needed without having to take an adverse action against an employee when the job title or duties have changed, but the grade has not.

S.Rep. No. 969, 95th Cong., 2d Sess. 49–50 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 2723, 2771–72. Under the Reform Act, the Board does not have appellate jurisdiction over reassignments not constituting a reduction in grade or pay, even though the reassignment reduces the employee's status, duties, or responsibilities. *See, e.g., Wilson v. Merit Systems*

*Protection Bd.*, 807 F.2d 1577, 1580–81 (Fed.Cir.1986).

The Board, however, has recognized that there may be situations in which what appears to be merely a reduction in rank, because there is no change in grade or pay, in fact constitutes a reduction in grade. In *Russell v. Department of the Navy*, 6 MSPB 585, 6 M.S.P.R. 698 (1981), the Board held that

> where an employee is reassigned from a position which due to issuance of a new classification standard or correction of classification error is worth a higher grade, the employee meets the legal and qualification requirements for promotion to the higher grade, and where the employee who held that position is permanently reassigned to a position classified at a grade level lower than the grade level to which the employee would otherwise be promoted, then the employee is reduced in grade. 5 U.S.C. § 7512(3).

*Id.* 6 M.S.P.R. at 711.

The Board also stated that in the Reform Act

> Congress intended to eliminate only those appeals not relating to an employee's grade and that by adding reduction in grade as a standard, it intended to enable employees to appeal personnel actions where a reduction in grade can be demonstrated by the application of position classification principles.

*Id.* 6 M.S.P.R. at 707.

The Board's framing of the test for determining whether a reassignment at the same grade constitutes a "constructive demotion" in terms of whether there had been a classification error or a new classification standard indicates the Board's rationale for departing from the literal language of the Reform Act that the Board has appellate jurisdiction over only "reductions in grade." The Board's theory apparently is that if a position originally was classified erroneously or a change in classification standards would have mandated a change in grade, it was proper to view the employee as if that error had been rectified, so that the employee would be occupying a position with a higher grade than he

actually had. The employee's grade therefore was reduced when the employee was reassigned at the same grade because, had the position been properly classified at the higher grade, that reassignment would have reduced the grade.

This interpretation by the Board of the statutory term "reduction in grade" is a reasonable implementation of the Board's broad authority to interpret and apply the statutory provisions it administers. *Cf. Bennett v. Department of Navy*, 699 F.2d 1140, 1146 (Fed.Cir.1983). Moreover, since the Board created the concept of "constructive demotion," the agency also has considerable discretion to define the perimeters of the concept.

■ Specifically, the Board here acted within its authority in concluding that the determination whether there had been a classification error was to be made with respect to the grade at which the position most recently had been classified, and that a classification error could not be established by showing that, because of an increase in duties, the position should have been upgraded through reclassification prior to the employee's reassignment. This narrow scope of "classification error" accords with and furthers the congressional policy reflected in the Reform Act to "increase the flexibility of agencies to assign employees to positions and duties where they are needed without having to take an adverse action against an employee when the job title or duties have changed, but the grade has not." S.Rep. No. 969, 95th Cong., 2d Sess. 49–50 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 2723, 2771–72.

### III

■ The Board held that Dr. Artmann had "failed to meet his burden to prove by a preponderance of the evidence" that the Federal Aid Chief position's classification in 1982 at GM–13 was the result of a classification error or that the creation of the new GS–14 position of Deputy Assistant Regional Director–Federal Aid in 1988 in place of the Federal Aid Chief position

was not the result of planned management action. (Dr. Artmann concedes that there was no change in the classification standards for the position since 1982). Dr. Artmann contends that the record does not support those findings, but requires the contrary conclusions that the 1982 classification of the position at grade GM–13 was the result of classification error and that the 1988 upgrading of the position was not the result of planned management action. He discusses at considerable length the evidence in the record that allegedly supports his contentions.

The evidence before the Board on these two issues was in conflict. Although there is evidence that supports Dr. Artmann's contentions, we cannot say that the Board's contrary findings are not supported by substantial evidence in the record.

A. With respect to the classification error issue, Dr. Artmann challenges the evidentiary support for the Board's findings that the Federal Aid Chief position was last classified in 1982 and that that classification did not involve a classification error.

1. The administrative judge found that Ms. Brown (the classification officer who classified the Federal Aid Chief position at grade GM–13 in 1982) in fact did so and that the 1982 action was the most recent classification of that position. In affirming those findings, the Board stated:

> The appellant first contends that Ms. Brown did not in fact classify the Federal Aid Chief position in 1982 because there was no evidence that she actually compared the positions' [sic] duties and responsibilities with the classification standards. However, the record shows that the appellant's supervisor certified on the cover sheet of the position description that it was an accurate statement of the position's duties and responsibilities, and that Ms. Brown certified on the same document that the position had been classified in accordance with applicable standards.... Therefore, we find that the position was classified by Ms. Brown in 1982.

*Artmann v. Interior*, 44 M.S.P.R. 443, 445–46 (1990) (citation and footnote omitted).

A classification action becomes effective when a person with properly delegated authority signs Optional Form 8 (the cover sheet of the standard position description), certifying that a position has been properly classified. *See* 5 C.F.R. § 511.701(a)(1)(i) (1990). Ms. Brown had that authority and took that action. We have no reason to reject the Board's finding that the classification officer's signature on Optional Form 8 established the classification of the Federal Aid Chief position in 1982. Although Dr. Artmann argues that "[j]ust because a cover sheet has been signed does *not* mean its [sic] been actually classified" (emphasis in original), he has not shown that the Board's finding is not supported by substantial evidence or otherwise invalid.

2. In holding that Dr. Artmann had not established that there had been a classification error in 1982, the administrative judge stated:

> A classification is erroneous if the position was not classified in conformance with published classification standards. None of the evidence upon which the appellant relies specifically describes which published classification standards were misapplied in determining the classification of his position in 1982. The appellant, who was represented by counsel, failed to specifically identify the duties and responsibilities that he was performing in 1982 or explain how the proper application of classification standards would have resulted in a grade 14 rating for his position. Absent any such explanation, the Board is not required to wade through the entire record to determine if the evidence demonstrates any basis for concluding that his position was entitled to a higher grade due to classification error.

*Artmann v. Interior*, MSPB Docket No. CH07528910456, slip op. at 5–6 (Sept. 12, 1989) (citations omitted). Although Artmann presented evidence allegedly supporting a higher grade for the position after 1982—e.g., a 1984 audit of the position

made in response to added duties—the administrative judge rejected this evidence as being both equivocal and irrelevant to whether a classification error was made in 1982. The Board agreed, noting that "the crucial issue in this case is not simply whether the Federal Aid Chief position should have been classified as a GM–14 position, but rather whether the position should have been classified at that level due to a classification error." *Artmann v. Interior*, 44 M.S.P.R. 443, 446 (1990).

Before this court, Artmann still does not point to any direct evidence of a classification error in 1982, claiming that the "demand of such specific evidence is insurmountable...." Rather, he argues that the testimony of his expert, Mr. Miller, a former agency Classification Officer, constitutes "substantial circumstantial evidence" of classification error. Miller testified that when he classified the Federal Aid Chief position in 1981, it "graded out" at the grade 14 level. He also testified that, as a result of his 1984 audit, the Federal Aid Chief position's "classification may be at the GM–14 level."

In rejecting this contention, the Board stated:

> Mr. Miller testified that his audit report did not indicate that the reason for his grade-level finding was that the position had been erroneously classified. The administrative judge clearly recognized the crucial issue and relied on this testimony in determining that the appellant did not show that, at the time of his reassignment, his position was entitled to a higher grade due to classification error.

*Id.* at 446 (citations omitted). We agree with the Board that Miller's testimony did not compel a finding that Ms. Brown's classification of the position at GM–13 in 1982 constituted a classification error. Not only was the testimony equivocal, but the record indicates that the duties of the Federal Aid Chief position had increased after 1982, thereby weakening the probative force of the 1984 audit evidence.

B. Our upholding of the Board's finding that the 1982 classification of the Federal Aid Chief position was not the result of a classification error would seem sufficient to sustain the Board's determination that the 1988 reassignment of Dr. Artmann to another GM–13 position did not constitute a constructive demotion. In its decision, however, the Board apparently viewed the question whether the upgrading of the position in 1988 was the result of planned management action as another element to be analyzed in making the constructive demotion determination, and discussed the evidence on that issue. We therefore also examine that portion of the Board's decision.

Dr. Artmann argues that because the duties of the Federal Aid Chief position had increased between the original classification of the position in 1982 and the creation of the new position of Deputy Assistant Regional Director–Federal Aid in 1988, following the reorganization of the Service in 1987, the upgrading of the Federal Aid Supervisor was not *"due to* planned management action" (emphasis in original). The fact that Dr. Artmann's duties may have increased since 1982 is not inconsistent with the Board's finding that the higher grade given to the successor position in 1988, following the reorganization, resulted from planned management action. Indeed, the Board's finding that additional duties had been given to the successor position suggests that a reason for the higher grade was management's recognition of those additional duties.

After reviewing the evidence regarding the reorganization of the Service in 1987 and its effect on the Federal Aid Chief position, the Board concluded that "there is a significant amount of evidence showing that the Federal Aid Chief position was upgraded due to the addition of duties and as a result of a reorganization in 1987, not because of a classification error." *Id.* at 448. The administrative judge credited the agency's testimony that the 1987 reorganization gave the Federal Aid Chief greater responsibility, and that such effect was the result of planned management action. Substantial evidence supports the Board's finding that the 1988 upgrading of the position resulted from planned management action. Whatever contrary evidence Dr. Art-

mann presented on this issue does not require rejection of the Board's finding.

## CONCLUSION

The order of the Merit Systems Protection Board dismissing the appeal for lack of jurisdiction is

AFFIRMED.