NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CHRISTOPHER R. CHIN-YOUNG,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2023-1510

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-15-1030-l-1.

---

Decided: September 20, 2023

---

CHRISTOPHER CHIN-YOUNG, Tallahassee, FL, pro se.

YARIV S. PIERCE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, DOUGLAS K. MICKLE.

---

Before PROST, HUGHES, AND STOLL, *Circuit Judges.*

PER CURIAM.

Mr. Christopher Chin-Young appeals a decision of the Merit Systems Protection Board (Board) denying his petition for review of the administrative judge's decision to sustain his removal. Because the Board correctly found it did not have jurisdiction to decide the merits of Mr. Chin-Young's detail to another directorate preceding his removal, and because the Board did not err in denying Mr. Chin-Young's claims of whistleblower retaliation, return rights, or harmful procedural error, we affirm.

I

In 2013, Mr. Chin-Young was employed as the Deputy Director (Supervisory Program Analyst) for the Chief Integration Office (CXO) Directorate in the Office of the Army Chief Information Officer (Agency). In 2014, the Agency "began plans to reorganize and dissolve the CXO Directorate." S.A. 2.[1] At this point, Mr. Chin-Young was detailed to work in the Cyber Security Directorate instead.

In April 2014, Mr. Chin-Young left his detail and prepared for deployment to Afghanistan, where he was to serve in a civilian capacity for a one-year tour through the Ministry of Defense Advisors (MoDA) program. He arrived in Afghanistan around July 3, 2014. Soon after his arrival, Mr. Chin-Young submitted a complaint to the Special Inspector General for Afghanistan Reconstruction (SIGAR) reporting allegations of fraud, waste, and abuse of funds. After Mr. Chin-Young had served only six weeks abroad, the Senior Telecommunications Advisor working with Mr. Chin-Young in Afghanistan recommended that Mr. Chin-Young be immediately redeployed because he had "demonstrated an inability to adjust . . .[,] caused Senior Leaders to question his ability . . ., and [was] a negative influence to other team members." S.A. 119.

---

[1]   "S.A." refers to the supplemental appendix the government filed with its responsive brief.

Due to this recommendation, roughly two months after arriving in Afghanistan, Mr. Chin-Young returned to the United States. On September 8, 2014, he sent an email to his former supervisor in the Cyber Security Directorate informing him that he was returning from his MoDA position in Afghanistan and would be taking sick and administrative leave for a few weeks before returning to work.

On November 3, 2014, Mr. Chin-Young was issued an official memorandum informing him that his new detail would be with the Cyber Security Directorate in the Program Integration and Training Division at the Pentagon. He also received an email from the Chief of Human Resources informing him that his supervisor for this detail position would be Ms. Autumn Aquinaldo. His grade and pay in this detail were the same as the grade and pay he had received when he was at the CXO Directorate and remained the same until his removal.

After reporting to his new Cyber Security Directorate detail only one time (on December 17, 2014), Mr. Chin-Young "effectively declined the detail and refused to report for work." S.A. 3 (citing S.A. 38). Instead, he maintained that he was working remotely in his former capacity at the CXO Directorate. He was reminded on numerous occasions by his then-supervisor (Ms. Aquinaldo), his former supervisor (Mr. Lundgren), the Director of Cybersecurity (Ms. Miller), and the Deputy Chief Information Officer (Mr. Wang) that he was currently detailed to the Pentagon Cyber Security Directorate and was required to appear at his workstation at the Pentagon. Still, he argued that his detail was improper, Ms. Aquinaldo was his subordinate (not his supervisor), and he was entitled to keep working at the CXO Directorate. Other than four hours on December 17, 2014, Mr. Chin-Young never reported to work at his new detail in the Cyber Security Directorate.

On May 29, 2015, the Agency issued Mr. Chin-Young a memorandum proposing his removal from the federal

service for misconduct. The Agency based his removal on five charges: (1) Absence without Leave (AWOL), (2) Failure to Comply with Leave Procedures, (3) Failure to Follow Instructions, (4) Insolence, and (5) Lack of Candor. Mr. Chin-Young submitted a written response to the memo. But despite being given an opportunity to review the evidence supporting his removal, the Agency found he did not do so. On July 24, 2015, the Agency deciding official sustained all charges and specifications in the May 29, 2015 memorandum. The Agency removed Mr. Chin-Young from service effective July 31, 2015.

## II

Mr. Chin-Young filed an appeal with the Board challenging his removal and raising affirmative defenses, including retaliation, whistleblower reprisal, and harmful procedural error. After a four-day hearing, an administrative judge issued a 76-page initial decision which held that the Agency had proved all charges for Mr. Chin-Young's removal and that Mr. Chin-Young had failed to prove his affirmative defenses. The Board affirmed that decision, with a few modifications, on January 13, 2023.

Mr. Chin-Young now appeals the Board's decision.[2] We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## III

We review Board decisions for whether they are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not

---

[2]    Mr. Chin-Young subsequently filed five other appeals with this court that are not decided here. *Chin-Young v. Dep't of the Army*, No. 23-1587 (Fed. Cir.); *Chin-Young v. Dep't of the Army*, No. 23-1588 (Fed. Cir.); *Chin-Young v. Merit Sys. Prot. Bd.*, No. 23-1589 (Fed. Cir.); *Chin-Young v. Merit Sys. Prot. Bd.*, No. 23-1590 (Fed. Cir.); *Chin-Young v. Dep't of the Army*, No. 23-1595 (Fed. Cir.).

in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We review legal conclusions de novo and factual findings for substantial evidence. *Salmon v. Soc. Sec. Admin.*, 663 F.3d 1378, 1381 (Fed. Cir. 2011); *Moravec v. Off. of Pers. Mgmt.*, 393 F.3d 1263, 1266 (Fed. Cir. 2004). Whether the Board has jurisdiction over an appeal is a question of law we review de novo. *Coradeschi v. Dep't of Homeland Sec.*, 439 F.3d 1329, 1331 (Fed. Cir. 2006). Although pro se pleadings are generally held to less stringent standards than pleadings drafted by counsel, pro se litigants still bear the burden of establishing jurisdiction over their claims. *Prewitt v. Merit Sys. Prot. Bd.*, 133 F.3d 885, 886 (Fed. Cir. 1998).

## IV

On appeal, Mr. Chin-Young identifies four instances he believes to be reversible error. In particular, he argues that (1) his removal was improper because it was based solely on an "illegitimate" detail to the Cyber Security Directorate, (2) the Board erred by not finding whistleblower retaliation, (3) the Board erred by not addressing his argument that he had the right to return to his job at the CXO Directorate, and (4) it was harmful procedural error for the Agency not to send him the evidence it relied on in deciding to remove him. We affirm the Board's decision.

## A

We start with Mr. Chin-Young's argument that his detail to the Cyber Security Directorate was "illegitimate," and that he therefore was not required to report to work at this detail. Informal Op. Br. at 18. We agree with the Board that such an argument goes to the merits of the Agency's decision to detail him, and thus does not fall within the Board's jurisdiction.

The Board does not have jurisdiction over the merits of an Agency's reassignment or detail if that employment action does not result in the loss of grade or pay for that employee. *Artmann v. Dep't of the Interior*, 926 F.2d 1120, 1122 (Fed. Cir. 1991). This is true even if the reassignment or detail "reduces the employee's status, duties, or responsibilities." *Id.*[3] Here, Mr. Chin-Young debates the legality of his detail to the Cyber Security Directorate. But the fact that he did not suffer a loss in grade or pay as a result of that detail is supported by substantial evidence. Indeed, his removal papers from 2015 reflect that he had the same GS-15 grade and pay when he was removed from the Agency. Thus, whether the Agency's decision to detail him to the Cyber Security Directorate was unlawful is not a question for the Board because the detail itself was not an adverse action.

Moreover, Mr. Chin-Young was not entitled to unilaterally refuse to report to his detail even if he believed it to be illegitimate. Rather, an employee who is reassigned to different job duties and who questions the legal basis for that reassignment "must perform his assigned job duties and then petition for relief through the appropriate grievance proceedings." *Hamlin v. U.S. Postal Serv.*, 1998 WL 887041, at *2 (Fed. Cir. Dec. 15, 1998); *accord Bigelow v. Dep't of Health & Human Servs.*, 750 F.2d 962, 965–66 (Fed. Cir. 1984). We need not reach the merits of Mr. Chin-Young's detail here because, even if it were somehow improper, he still would have been required to report to work and protest the legality of the detail while doing so.

---

[3]    Although there are limited exceptions to this general rule, such as for "constructive demotion" when an employee's prior job title should have been reclassified at a higher pay grade, it is unclear how such an exception would apply here.

Mr. Chin-Young's arguments can also be read as arguments that his detail never happened at all. We are similarly unpersuaded by this argument. Substantial evidence supports the Board's conclusion that Mr. Chin-Young was detailed from his role at the CXO Directorate to the Cyber Security Directorate. For example, the record supports the Board's findings that the Agency had begun to phase out the CXO Directorate in 2014 (S.A. 216–24); Mr. Chin-Young had already been detailed to the Cyber Security Directorate before his deployment to Afghanistan (S.A. 486–93); when he returned from Afghanistan, Mr. Chin-Young emailed his former supervisor at the Cyber Security Directorate that he would be returning to work (S.A. 123); and the Chief of Human Resources notified Mr. Chin-Young of his new detail to the Cyber Security Directorate in writing upon his return to the United States (S.A. 133, 148–52). The record also includes numerous emails where his colleagues questioned why he was not at his detail at the Cyber Security Directorate. *E.g.*, S.A. 37, 45, 48–49, 127–30, 139, 144–45, 153–60.

Mr. Chin-Young's argument that he was not detailed to the Cyber Security Directorate rests on his belief that he had never been released from his MoDA assignment when he returned early from Afghanistan, and so the Agency could not have detailed him to a different position. But the administrative judge found Mr. Chin-Young's testimony on this point to be unreliable and inconsistent with the emails he sent around that time. Rather, she credited the Agency's witnesses' testimony and the August 28, 2014 "Letter of Release for Redeployment" as proof that Mr. Chin-Young had been formally released from the MoDA assignment. S.A. 35–36 (referring to S.A. 121). Mr. Chin-Young argues that this letter does not establish a formal release and is just a travel authorization document. But substantial evidence supports the administrative judge's and Board's contrary findings. In particular, the document states an "[e]ffective date of release" of "29 August 2014" and

explicitly provides that Mr. Chin-Young "will not be return-ing." S.A. 121. This, paired with a lack of evidence suggest-ing that something more was required to release him from the MoDA assignment, and considering Mr. Chin-Young's own email to his former supervisor letting him know that he was available to restart his work in the United States, constitutes substantial evidence that he was, in fact, re-leased from the MoDA assignment.

Given the above, there is substantial evidence to sup-port the Board's finding that Mr. Chin-Young was detailed to the Cyber Security Directorate. And whether this detail was legally improper is beyond the Board's jurisdiction be-cause it did not result in a loss of grade or pay.

B

Next, we address Mr. Chin-Young's argument that he was removed from service because of unlawful whistle-blower retaliation. We hold that the Board did not err by concluding there was no whistleblower retaliation in Mr. Chin-Young's case.

To establish a claim for whistleblower retaliation, an employee must prove by a preponderance of the evidence that (1) the employee made a protected disclosure under 5 U.S.C. § 2302(b)(8), (2) they were subject to an adverse personnel action, and (3) the protected disclosure was a contributing factor to the adverse personnel action. *Johnston v. Merit Sys. Prot. Bd.*, 518 F.3d 905, 909 (Fed. Cir. 2008). If the employee provides that proof, then the burden of persuasion shifts to the agency to show by clear and con-vincing evidence that it would have taken the same person-nel action even without the protected disclosure. *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012). We consider the *Carr* factors in assessing whether an agency has satisfied its clear and convincing evidence burden: (1) "the strength of the agency's evidence in support of its personnel action"; (2) "the existence and strength of any motive to retaliate on the part of the agency officials who

were involved in the decision"; and (3) "any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

Here, the Board concluded that Mr. Chin-Young made a protected disclosure under § 2302(b)(8) when he filed his SIGAR complaint while in Afghanistan in 2014, in which he alleged fraud, waste, and abuse of funds. The Board also concluded that the officials who proposed or decided to remove Mr. Chin-Young had knowledge of that complaint, and so it was theoretically possible that the SIGAR complaint was a contributing factor in their removal decision. However, the Board went on to consider the *Carr* factors and concluded that the Agency would have removed Mr. Chin-Young regardless of that SIGAR complaint. In particular, the Board pointed to the administrative judge's decision to sustain the charges of AWOL, failure to follow leave procedures, failure to follow instructions, insolence, and lack of candor because of the abundant evidence that Mr. Chin-Young unilaterally rejected his detail orders and did not report to work.

We agree with the Board. Because the legitimate reasons for Mr. Chin-Young's removal were so compelling here, the Board's conclusion that he would have been removed regardless of the SIGAR complaint is supported by substantial evidence. Moreover, the Board properly considered the *Carr* factors in its analysis and we discern no legal error.[4]

---

4    Although the government agrees with the Board's conclusion that there was no whistleblower retaliation, it argues before us that the Board erred in finding that the SIGAR complaint was a protected disclosure in the first

On appeal, Mr. Chin-Young speculates about various sources of retaliatory animus that he argues should lead to reversal. None of these theories lead us to a different outcome. For example, Mr. Chin-Young claims that we should apply the "[c]at's [p]aw theory of law"[5] because (1) his former supervisor, Mr. Krieger, was the one who informed the new Director of the Cyber Security Directorate, Mr. Wang, that Mr. Chin-Young's position at the CXO Directorate was "abolished," and (2) Mr. Krieger's reason for doing so was to "get[] back at the Appellant for not containing [a] class action complaint" against Mr. Krieger. Informal Op. Br. at 13. As another example, Mr. Chin-Young argues that a memorandum written by a colleague in Afghanistan, Dr. Warner, recommending his deployment back to the United States was improperly considered by the official who issued his proposal for removal and "inflame[d]" that official's "retaliatory animus." Informal Op. Br. at 16. But these speculative arguments are disagreements on issues of fact and are not supported by the record.

Mr. Chin-Young also references alleged protected disclosures other than his SIGAR complaint, including his vocal opposition to the Agency's hiring of other employees. The administrative judge addressed most of these other alleged protected disclosures and found that they could not have been motivating factors in his removal because the removing officials were not aware of the disclosures. These conclusions are supported by substantial evidence because Mr. Chin-Young did not provide evidence that these other

---

place. We need not reach this issue because we agree with the Board's analysis on the *Carr* factors.

[5]    A "cat's paw" issue arises in the context of a deciding official being improperly influenced by someone with animus. *See, e.g.*, *King v. Dep't of Army*, 602 F. App'x 812, 815 n.1 (Fed. Cir. 2015) (citing *Staub v. Proctor Hosp.*, 562 U.S. 411 (2011)).

alleged disclosures were provided to the removing officials. But even if they were protected disclosures, the Agency would succeed on the *Carr* factors for the same reason as with respect to the SIGAR complaint: the record provides substantial evidence that the Agency would have removed Mr. Chin-Young regardless. As explained above, the record is replete with evidence that Mr. Chin-Young refused to show up to his detail position at the Cyber Security Directorate and instead unilaterally re-appointed himself to a position at the CXO Directorate that no longer existed. Thus, the government has met its burden of persuasion on the *Carr* factors because of these strong, legitimate reasons for Mr. Chin-Young's removal.

Finally, to the extent Mr. Chin-Young argues retaliation based on his Equal Employment Opportunity (EEO) activity, these issues are not properly before us. As Mr. Chin-Young himself acknowledges, although he "raised claims of discrimination and retaliation based on his race and prior protected EEO activities . . . discrimination is not a part of this appeal." Informal Op. Br. at 7.

For these reasons, we affirm the Board's conclusion that Mr. Chin-Young's removal was not a result of retaliation for protected whistleblowing activity.

## C

We turn next to Mr. Chin-Young's argument that the Board erred because it did not address his argument that he had the right to return to his job at the CXO Directorate under 10 U.S.C. § 1586, a statute that gives those deployed abroad a right to return to their positions in the United States once they have successfully completed their tour. We find no error with the Board's conclusion that Mr. Chin-Young did not establish a claim under § 1586 because substantial evidence supports its finding that Mr. Chin-Young retained his position of record until removed from service.

Mr. Chin-Young argues that it was error for the Board not to consider his arguments under § 1586. But even though the Board found his § 1586 arguments to be forfeited, it also held that Mr. Chin-Young had not established a claim under § 1586 because "[r]*egardless* [of whether the arguments were forfeited], the record reflects that the appellant's position of record remained the same." S.A. 18 (emphasis added). Thus, the Board *did* consider the merits of this argument, even though it found it to be forfeited. For this reason, Mr. Chin-Young's argument that the Board erred in not considering the argument is unpersuasive.

We are also unpersuaded as to the merits of Mr. Chin-Young's return-rights argument. Section 1586 entitles an employee who has been assigned to a position abroad to return "without reduction in the seniority, status, and tenure held by the employee immediately before his assignment to duty outside the United States." 10 U.S.C. § 1586(c). If the employee's former position no longer exists, however, the statute provides that the employee can be placed in a different position so long as they retain "rights and benefits equal to the rights and benefits of, and in a grade equal to the grade of, the position which he held immediately before his assignment to duty outside the United States." *Id.* § 1586(c)(2). Here, the Board's finding that Mr. Chin-Young retained his position of record until his removal is supported by substantial evidence—his removal documents show that he maintained the same grade and pay up until he was removed. The Board's finding that the CXO Directorate was effectively dissolved is also supported by substantial evidence, including testimony that the administrative judge appeared to find credible. S.A. 33 (citing the consistent testimonies by the Chief Information Officer, the Deputy Chief Information Officer, and the Chief of Human Resources). Given these facts, Mr. Chin-Young has not established a violation of his return rights under § 1586.

Mr. Chin-Young has also failed to show that the Agency violated § 1586 for a separate, independent reason: the

statute applies only to employees "who satisfactorily complete[]" their duty abroad. 10 U.S.C. § 1586(b)(2). Here, Mr. Chin-Young has not shown that he satisfactorily completed his duties in Afghanistan. To the contrary, the evidence of record shows that he came back to the United States ten months early and that at least one other employee in Afghanistan recommended that he be sent back because of unsatisfactory work.

For these reasons, Mr. Chin-Young has not shown that the Agency violated § 1586, nor that the Board erred in handling its argument to that effect.

D

Finally, we address Mr. Chin-Young's argument that the Agency committed harmful procedural error by not making accessible the evidence it relied on in deciding to remove him. This argument is contrary to the substantial evidence of record, and the Board did not err by concluding that offering to make the materials available upon request was not a harmful procedural error.

We have previously held that there is no harmful procedural error where an agency has provided an employee with access to the documents it relied upon in making its removal decision, even if the type of access granted was inconvenient. *Novotny v. Dep't of Transp.*, 735 F.2d 521, 523 (Fed. Cir. 1984); *see also Harding v. U.S. Naval Acad.*, 567 F. App'x 920, 925 (Fed. Cir. 2014) ("[P]roviding access to the materials the agency relied upon to support the removal action was sufficient to satisfy any possible due process concerns."); *Charity v. Gen. Servs. Admin.*, 180 F. App'x 952, 954 (Fed. Cir. 2006) (concluding there was no harmful procedural error where "the record showed that the agency offered [the employee] access to the evidence it relied on in its charges but that there was no showing that [the employee] requested and was denied such access").

Here, substantial evidence supports the Board's conclusion that the Agency made the evidence accessible to Mr. Chin-Young by offering it for inspection upon request. *E.g.*, S.A. 181–82 (Notice of Proposed Removal informing Mr. Chin-Young that he had the right to reply to the notice and "to review the material relied upon in this matter," by contacting a Human Resource Specialist whose contact information was provided). And while Mr. Chin-Young implies that he tried to access the documents but was refused access, this allegation is not supported by the record. As the administrative judge explained in her decision, the only evidence that Mr. Chin-Young tried to access these documents was his own testimony, and the administrative judge did not find that testimony credible. S.A. 89 n.33. In contrast, the other testimony—which the administrative judge did find credible—and the email evidence on this point show (1) that Mr. Chin-Young was informed he needed to contact the Human Resource Specialist to access the evidence supporting his removal and (2) that he did *not* request those documents. Thus, there is substantial evidence that the Agency made the materials accessible to Mr. Chin-Young and that Mr. Chin-Young was not denied access.

Like in *Charity*, this type of access is sufficient to meet the Agency's procedural burden. 180 F. App'x at 955. Thus, the Board properly applied our prior decisions in holding that there was no harmful procedural error.

V

We have considered the remainder of Mr. Chin-Young's arguments and find them unpersuasive. Thus, we affirm the Board's decision denying Mr. Chin-Young's petition for review of the initial decision that sustained his removal.

**AFFIRMED**

Costs

No costs.